## J. H. CURLIN, ADMINISTRATOR, AND OTHERS, v. O. HENDRICKS.

1. That a mere voluntary defective conveyance or donation of real estate will not be enforced, either at law or in equity, is too well settled to be now questioned.

2. While a valuable consideration is requisite to invoke the aid of equity in the enforcement of a defective conveyance, it is not necessary that the consideration be of a pecuniary character, nor that it be a full or adequate equivalent for the property. If some benefit is to enure to the party promising, or some detriment to be sustained by the promisee, it constitutes a sufficient consideration.

3. Reviewing the case of Boze v. Davis, 14 Texas, 331, this court disapproves the disposition made of that case, and considers that a sufficient consideration was established therein. And with respect to the case of Neal v. Neal, 9 Wallace, 8, this court deems that the valuable considerations of marriage and the expenditure of money were shown, and sufficed to uphold the parol promise and equities.

4. In 1846, one B. avowed his wish to purchase the town lot in controversy for his two sons, and having then purchased it, he said, on several occasions in 1847 and 1848, that he had given it to his son Francis, who, in the spring of 1847, went into possession of it, improved it, and subsequently occupied and claimed it as his own. No consideration of any kind passed, and B. died in 1850, without making any conveyance or other disposition of the property. H., the plaintiff in this action of trespass to try title, recovered a money judgment against Francis in 1856, levied on the lot as his property and bought it at the sheriff's sale, in March, 1857. *Held*, that Francis, as a donee or purchaser from his father, acquired no title or right which could be protected or enforced by the courts in his favor, or in favor of any one claiming under him; that his improvements, being made without his father's consent and for his own benefit, with full knowledge of the condition of the title, raised no equity which the courts could enforce; and that if he had any right to compensation for his improvements, it was an uncertain right, ascertainable only by decree, and was not subject to execution, so as to vest in the plaintiff by virtue of his purchase at the sheriff's sale. But any interest inherited by Francis from his father, and held by him at the time of the sheriff's sale, passed under it to the plaintiff, who is entitled to recover it in this action.

15—XXXV.

5. Title by ten years' limitation cannot be established by proof upon the trial, unless the pleadings of the party contain proper allegations as the basis of the proof.

APPEAL from Harrison.    Tried below before the Hon. J. B. Williamson.

There was a former appeal in this case, of which a report will be found in 30 Texas, 296. The original pleadings of the parties, and the principal facts down to that stage of the case, will there be found.

After the remand of the cause upon that appeal, the defendants amended their pleadings, but the amendments have no bearings upon the questions discussed in the present opinion of the court. The defendant Snediker having died, his administrator, the appellant Curlin, was made a party.

The charge of the court to the jury consisted merely of twenty-five special issues, without any exposition of the law. On the responses of the jury to these issues, judgment for the plaintiff was rendered, not only for the land but also for sixteen hundred dollars of rents since the institution of the suit, as found by the jury. Motions of the defendants for a new trial, and for the correction of the judgment, were overruled, and they appealed.

The property in controversy was a lot in the town of Marshall, Harrison county ; and not in "the town of Harrison," as stated in 30 Texas.

*G. Lane*, and *Poag & McKay*, for the appellants.— The fifth and sixth assignments will be considered together. They comprise the errors of not giving judgment on the special verdict for the defendants ; or at least to all of them, and as to all interests, except the interest of F. W. Brewer, derived as heir to his father.

The case was reversed at the Spring Term, 1867, at Tyler (see case of Hendrick v. Snediker and others), and the cause remanded " for further proceedings in accordance with the opinion of this court." This opinion commences by indicating a dissent to the principles on which the discussion of Boze v. Davis is rendered (14 Texas, 336), and indicating that the authorities cited by Chief Justice Hemphill do not support his views, and citing the case of King v. Thompson (9 Peters, 204, of the Supreme Court of the United States) as presenting principles more congenial, with the case of Shepherd v. Bever (9 Gill, 32, Supreme Court of Maryland), of same character. The opinion then states: "But if in the case before us it should be held that F. W. Brewer, the defendant in execution, was entitled to have claimed performance of the parol promise of his father, to make him a title to the lot, we feel by no means satisfied it would benefit the appellant. Would the equitable rights of the party making improvements, under such circumstances, be subject to levy and sale under execution?" After showing that such an interest was not subject to sale under execution, the opinion leaves the matter for future discussion. The opinion then says: "Whatever may be thought as to the foregoing questions, on the first of which the case was evidently decided, the judgment must be reversed. It is averred in the petition and admitted by the demurrer, that the defendant in the execution went into possession of the lot in January, 1847, and from that time until the purchase by appellant at sheriff's sale in March, 1857, he occupied, improved and held said lot in exclusive possession as his own property," etc. Evidently, then, he had acquired by this possession of it, "full property, precursive of all other claims," by virtue of the seventeenth section of the statute of limitation, although his

possession was without any evidence of title whatever. The discussion closes by assenting to the propriety of the court below sustaining the demurrer to the amended petition of plantiff, amending his prayer, which will be more particularly referred to hereafter.

I wish to call the attention of the court, first, to that portion of the opinion which decides the case on the possession of ten years and the statute of limitations. I have quoted the language of the opinion, which says the plaintiff avers in his petition, and it is admitted by the demurer, that F. W. Brewer "went into the possession of the lot in January, 1847, and from that time until the purchase by appellant at sheriff's sale, in March, 1857, he occupied," etc. Here the court rendering the opinion committed a mistake, or the copy of the record which was sent up, on which the case was decided, was unfaithfully given. On the first page of the amended petition, the plaintiff avers that he recovered a judgment against F. W. Brewer and one Adams, on which an execution issued, which, on the thirteenth day of January, 1857, was levied on the east half of lot No. 3, block No. 64, and that it was sold on the second day of March, 1857. The plaintiff then goes on to state, "That on, to-wit, the —— day of January, 1847, Balaam H., the father, was the owner of the lot by title deraigned from the government, etc.; that on, to-wit, the day and year last aforesaid, donated it to F. W. Brewer, and then put him in possession thereof, etc.; that the said Francis W. then, in consideration of said donation, entered into said premises, and held them adversely, etc., until, to-wit, the date of the aforesaid levy." On the third page of amended petition the plaintiff says: "On, to-wit, the —— day of January, 1847, the said Francis commenced in said house the business of a grocery merchant, and continued to occupy

it till the —— day of ——, 1857, and afterwards, and until the levy aforesaid;" and "that after said donation, and until the levy aforesaid, said Francis always claimed the property as his own," etc. The plaintiff then, on the same page of the petition, says : "And the plaintiff shows that, by reason of the premises aforesaid, first, the said Francis W. was, at the time of said levy and sale, vested with a valid and perfect equitable title to said premises," etc.; second, "the plaintiff succeeded to, and became vested with all the right, title and interest aforesaid of the said Francis W." This portion of the petition is not an averment of facts. It is true he says he was, at the date of the "levy and sale," vested with title, but he says the reason he thinks so is " by reason of the premises aforesaid ;" that is, he thinks so because he went into possession on the —— day of January, 1847, under the alleged donation, and remained in possession till the date of the levy ; but that is a mere concluson of law, in which he may or may not be mistaken. The petition would be as good without it as with it. This is all in the petition relative to the time of taking possesssion and the length of holding, and leaves that as stated by the plaintiff, that F. W. Brewer entered on the lot on the —— day of January, 1847, and held it till the levy, which was on the thirteenth of January, 1857. There is no averment in the petition, as stated in the opinion, that F. W. Brewer held it from January, 1847, till the sale, in March, 1857, covering a period of ten years by which to hold, by the seventeenth section of the statute of limitations, and leaves the averment that F. W. held from the —— day of January, 1847, till the date of the levy, which was the thirteenth of January, 1857. It is true that ten years might elapse from the —— day of January, 1847, till the thirteenth day of January, 1857, but it rests entirely on

what day in January, 1847, the blank is filled with. The plaintiff does not fill the blank with any day. That blank must be filled by the court. The court does not know, in fact, what day. The presumption with the court is, that if the possession was taken previous to the thirteenth day of January, 1847, that the plaintiff would so have averred, and as he did not, the presumption would be it was after the thirteenth. At any rate, the principle is well settled in pleading, that if a party avers a fact in an uncertain or ambiguous manner, that it will be taken most strongly against him. Then, as he did not state the day in January, 1847, the court by these principles would fill the date with the thirty-first of January, 1847, which would be less than ten years.

This matter is not prominently brought before the court to prove that the Supreme Court, which rendered the opinion, was mistaken as to the averment of the length of the time Brewer was in possession, for that part of the opinion has little or nothing to do with the case now, but it is because the court below, in the trial of the case, fell into the same error. While our position is that the plaintiff alleged a less time than ten years of occupancy by F. W. Brewer, his proof on that subject would only apply to the length of time averred, and that proof for ten years or a longer time would not avail the plaintiff, from the simple fact that ten years possession was not averred. The allegation and the proof must agree. To allow a party to allege one thing and prove another would destroy all our well settled principles of pleading. Then, so far as the judge in the court below relied on this error in giving judgment for the plaintiff, and in so far as he relied on this error in refusing to give judgment for the defendants, or as to all interests but that inherited by F. W. Brewer, as heir-at-law of his father, the judgment should be reversed.

Recurring now to the opinion of the Supreme Court, in accordance with which the judge of the District Court was to be guided in the trial which has taken place, it is by no means certain that any principle or direction could be clearly gathered from it by the judge of the court below. The opinion commences by saying the case was evidently tried below on the principles established in Boze v. Davis (14 Texas, 331), yet while the opinion does not overrule Boze v. Davis, yet the court appears to be wary of it. The succeeding part of the decision says, that although the principles of the case of Boze v. Davis might be overruled, yet the court was by no means certain that it would help the plaintiff if the principles of the case of Boze v. Davis were overruled, as it would then be doubtful if F. W. Brewer had such a right as would be subject to execution, and the opinion closes by declaring that the sale under execution conveyed no right to the claim that F. W. Brewer had for improvements made on the land. The court well observes, that the facts in the case of Boze v. Davis are, in principle, the same as in the present case. Boze was the father-in-law of Davis. Davis, who is living in Texas, writes his father-in-law, Boze, who resides in Alabama, to come to Texas, promising, if he would do so, to give him one hundred acres of land. Boze, an aged man, comes to Texas, accepting the offer of Davis. The hundred acres are surveyed off by Davis, who promises to make a deed to it. Boze is put in possession of it by Davis, and Boze built on it and improved it. Davis died without making the deed ; and Boze brought the suit for a specific performance, and Chief Justice Hemphill, after a thorough investigation, and deeply commiserating Boze's situation, denied the specific performance.

The plaintiff in this case says Brewer's father gave

him the lot, promising to give him a deed. Brewer went into possession, placed there by the father, and the son Brewer made improvements and built a house. The father died without making the deed, and the plaintiff says Brewer had a right to a specific performance. Not, certainly, if the principles of the case of Boze v. Davis are sustained.

The argument of the "opinion" against the principles of Boze v. Davis, is mainly on the principles of the case of King v. Thompson. (9 Peters, 204.) There is this difficulty in that case being authority in this, from the fact that the contract in that case was in writing, and so stated and relied on in the bill for a specific performance. The facts of that case are about these : Thompson married King's daughter in 1812, and shortly after the marriage, as complainants say, King gave the house and lot, in Georgetown, to complainant, if he would repair the property, which was much out of repair, stating at the same time that he, King, intended it for his daughter.

Thompson entered, and repaired and improved ; left it in 1816, and King rented it for him. The written testimony was the correspondence between them in regard to the matter. The Supreme Court denied a specific performance.

The argument of the appellants in the Supreme Court was that this was a voluntary promise, and without consideration, and also that the written correspondence did not fix the terms of the contract. The Supreme Court admits that the contract was not specifically proved so as to authorize a specific performance, but says, "whatever uncertainty may exist as to the terms of the contract, there can be no question that complainants acted under it," etc. "In no point of view could such a contract be considered voluntary. There was

not only a good consideration, that of natural affection, but a valuable one. To constitute a valuable consideration it is not necessary that money should be paid, but if, as in this case, it be expended on the property on the faith of the contract, it constitutes a valuable consideration." This language is quoted by Chief Justice Moore, in the opinion of the Supreme Court of Texas, written by him on the reversal of this case at the Spring Term, 1867, at Tyler. No doubt the consideration was sufficient, and as little doubt of the sufficiency of the consideration in Boze v. Davis, and in this case. But the question in neither of the cases arises on the want of consideration. In the case of Boze v. Davis and this, the question is, that there was no memorandum of the contract in writing, whereby to charge the party, and whether there be no such memorandum in writing, did the circumstances take it out of the statute and authorize the court of equity to grant a specific performance? In King v. Thompson, the court said the memorandum in writing was not sufficient to define the terms of the contract, but there was enough to show that Thompson expended his money in repairs on the property, which was sufficient to raise a contract on the part of King, coupled with a lien on the property to pay back the money expended by Thompson on the faith of the contract. And so says Judge Hemphill in Boze v. Davis. The latter part of the decision in that case says : "Although neither Davis nor his representatives can be enforced to consummate the title to this land, yet," etc. Allowing to Boze, or any person in like situation, full pay for the improvements made in faith of the contract, where is the hardship in that? So far as the case of King v. Thompson goes, it is an authority in support, if anything, of Boze v. Davis. Now if in that case (King v. Thompson) parol evidence had been intro-

duced, or attempted to be introduced in aid of the writing, or to establish the contract altogether, then what the court would have said on that subject would be valuable on account of its high authority and judicial ability; but not having said a word on that subject, it is difficult to presume how a case in which the point was not before the court, and in regard to which the court very properly said not a word, can be authority. Chief Justice Moore says, in his opinion, that the only cases referred to by the court in support of the judgment of Boze v. Davis, to which he was able to refer, are Kirksey v. Kirksey, 8 Ala., 131, and Rucker v. Abell, 8 B. Monroe, 566, and he indicates that the facts are not similar, and are, consequently, insufficient as authority. We have not the authorities referred to at hand, and cannot judge of them by a perusal; but, if the facts of those cases differ from Boze v. Davis, as far as the facts in King v. Thompson, we can heartily join him in the opinion that they are very wide of the mark.

The question, what circumstances will take a case out of the statute, requiring a memorandum in writing, and enforce a parol agreement as to lands, has long been before the courts. Adams' Equity, treating on this subject (top page 262, 263, and marginal page 85, 86, and note), says: "The doctrine on this point is called the doctrine of part performance." Note 1, from this, says: "In nearly every State in the Union the rule is settled, that part performance takes a parol agreement out of the statute of frauds;" and gives a long list of authorities, and continues: "But in some of the States, as in Tennessee, North Carolina, Massachusetts and Maine, the general rule is different;" and gives another list of authorities. It is not every part performance that will take the case out of the statute, and Adams on Equity (top page 263, marginal 86), says,

"its principle appears to be, that if one of the contracting parties induce the other so to act, that if the contract be abandoned he cannot be restored to his former position, the contract must be considered as perfected in equity ; and a refusal to complete it at law is in the nature of a fraud." To apply this rule to this case, there is nothing shown, or attempted to be shown, why payment to Brewer for the amount expended by him in the faith of the parol donation would not return him "to his former position." Chief Justice Hemphill, on this subject, in Boze v. Davis (14 Texas, at page 336), says: "Much might also be said in favor of the policy of the law as it now exists. It is only in strong cases (where there has been part performance), that the courts will enforce parol contracts for land, even where a valuable consideration has been paid." It was to be hoped that in this vexed question, where differences exist in the several States in regard to it, it would remain, as to Texas, as settled in the case of Boze v. Davis. It is true that decisions found incorrect in principle have been overruled, but wisdom dictates adherence to established principles, and the case should, indeed, be glaringly wrong to authorize the substitution of a different rule. Certainty and stability in the law are first in importance. And surely there was nothing in the court that decided the case of Boze v. Davis inducing to a light consideration of that decision. That court stood high for great integrity and legal ability. The member of the court, Chief Justice Hemphill, who delivered the opinion in that case, in all the great qualities of a judge, if surpassed by any, has been equaled by few. He appears to have brought all his abilities to the consideration of the case. His manly heart was fully exercised. He commiserates Boze's situation, and says (14 Texas, 336): "The

case of the plaintiff is one to which, if possible, the courts should extend relief. He was induced, by the promises of the deceased, to abandon his home, remove to a distant country, and expended his toil and labor for years on this tract of land, with the assurance that title would be extended to him, and that it would be a secure asylum to him in his old age, with its attendant infirmities." His examination of the law of the case seems to have been thorough and complete. He says (page 335): "The defendants refer to numerous authorities in support of their position. These have been examined with some attention, and it is believed that no case can be found in which any such voluntary promise or contract as that set forth in the petition has been enforced, or in which courts have consummated, by a decree, a title which has been left imperfect by the parties themselves.

"These doctrines are stated very clearly and fully by Judge Story in his treatise on equity," etc., and cites Story on Equity (see 433, 787, 793, 987 ; 1 Fonb. Eq., B. 1, Ch. 5, § 2), and a long list of other high authorities.

In the case of Boze v. Davis, the right of Boze to have the value of his improvements is asserted ; but as it was not asked for, the court was unable, as the case stood, to extend it. No doubt, on the authority of the case, Boze was paid for his improvements to their full value—at least he had the full right to demand it, and therefore, as a rule, it is not a hard case ; and by establishing it, all that this court will say to the people of the State of Texas is this : If you are not a purchaser for a valuable consideration, but a mere parol donee, and have made improvements on the land donated, we cannot enforce the conveyance of the land, but you are entitled to payment for your improvements, with a lien on the land. It is suggested that this is the true

rule, and therefore that the judge erred in giving judgment for the plaintiff, and in not giving judgment for defendants for all interests in the lot, except the interest of F. W. Brewer, deceased, by inheritance from his father.

Chief Justice Moore, in his opinion reversing this case, further proceeds to say: "But if, in the case before us, it should be held that F. W. Brewer, the defendant in execution, was entitled to have claimed a specific performance of the parol promise of his father to make him a title to the lot, we feel by no means satisfied that it would benefit the appellant. Would the equitable rights of the party making improvements, under such circumstances, be subject to levy and sale under execution? The rights of such a party are more or less indefinite and uncertain until they have been fixed by the decree of the court," etc. And further on he says: "If uncertain interests of this sort are the subject of sale under execution, evidently they must be made at ruinous sacrifices to debtors, and without effecting the purpose of the law in satisfying the claims of creditors," etc. And he refers to Mr. Justice Lipscomb's opinion in Dougherty v. Cox (13 Texas, 209). This portion of the opinion of Chief Justice Moore is weighty and sound, and although it is not decided as the law of the case, yet the reasoning is incontrovertible and conclusive. It is almost trespassing on the court to add, that an execution commands the debt to be made of the personal and real estate of the debtor. It surely cannot, in the contemplation of the law, view such a right as Brewer's as his real property within the meaning of the execution. It certainly means such real estate by legal title, or such equitable title as would support, by our law, an action of trespass to try title, of which character are those given by Chief Justice

Moore. I will only say further on this point, that there can be no doubt that this defect in the title, and the sentiment and feeling, that the property was not subject to sale, because it was not Brewer's property by title, subjecting it to sale under execution—that this very property, the improvements alone valued at $1000, let alone the lot, property worth from fifteen to twenty dollars per month rent, sold at this very sheriff's sale for twenty-six dollars. It is, therefore, respectfully submitted that the judge in this cause erred in not giving judgment for the defendants. The latter part of Chief Justice Moore's opinion decides that the demurrer to the amended petition amending the prayer, was properly sustained. The amendment to the prayer of the petition is, that the plaintiff be subrogated to the rights of F. W. Brewer, and that the property be valued and judgment be given against the defendants for the amount, and the property sold to pay it. This opinion is on the ground that "if the appellant acquired not a right to the land by his purchaser at the sheriff's sale, he certainly acquired no interest in any claim which the defendant in execution may have had against the owners of the lot for the improvements which he had made on it," etc. And again, "The improvements, or the right of compensation for them, from the owner of the land, was not what the sheriff purported to sell," etc. The court erred in not rendering judgment for the defendant, the contract not being proved as averred.

*Wm. Stedman,* and *James Turner,* for the appellee, after discussing equitable principles respecting voluntary and defective conveyances, proceeded to consider whether F. W. Brewer's interest in the property was subject to levy and sale, as follows :

II.   But it is said by appellants' counsel that Chief
Justice Moore expressed a doubt whether, even if the
agreement in this case could be upheld, it would bene-
fit the appellee, as he considered it by no means certain
that such an interest was subject to levy and sale under
execution, and the counsel declare this portion of Judge
Moore's opinion to be "weighty and sound."

The court do express this doubt, but say that the
question was not discussed before them, and they there-
fore decline to determine it.   Is such an interest as that
held by F. W. Brewer subject to sale under execution?
In the case of Dougherty v.  Cox, 13 Texas, 209, Judge
Lipscomb says that our statute regulating executions
goes as far in subjecting equitable and trust estates to
execution as the statute of 29th Charles II.; and he lays
down the rule to be, that although every equity is not
subject to execution, yet where there is nothing to be
done on the part of the purchaser, nor on the part of
the vendor, but to make the title, the equitable interest
is subject to execution.

The statute of 29th Charles II. has been substantially
adopted in all the American States (so far as we have
been able to ascertain), and the decisions as to the ex-
tent to which trust estates are subject to execution under
it, are remarkably uniform.

In Bogart v. Perry, 1 Johns. Ch. R., 51, it was held,
that if the vendor gives the vendee a bond conditioned
to make title to land upon payment of the purchase
money, the latter, until payment of the purchase money,
has a mere equity, which is not subject to execution.
On appeal to the court of errors this decision was
affirmed, and it was further held, that if the purchase
money had been paid, the vendee's equitable interest
could be sold under execution. (See same case, 17
Johns., 351.)   In that case only a part of the purchase

money had been paid, and it was insisted that a proportional interest in the land might be sold ; but the court said that such an idea was a novelty, without reason or authority for its support; and that the statute embraces those cases only where the entire estate vests in the *cestui que use*, in consequence of his having paid the whole purchase money.

Afterwards, in the case of Jackson v. Parker, 9 Cowen, 72, it was held that the interest of a vendee under title bond, in possession of the land, was subject to sale under execution, although he had not paid the purchase money, because "the purchaser acquires all the debtor's legal rights, and possession is a legal right;" and it was likewise so held in the case of Jackson v. Scott, 18 Johns. R., 94. The rule therefore in New York is, that the estate of the vendee is subject to execution sale when nothing remains to be done by the purchaser, nor by the vendor, but to make title, but it is also liable when, notwithstanding, something remains to be done by the purchaser, *i. e.* the payment of the purchase money, if he is in possession of the property.

In Pennsylvania it was held that when the interest of a person in possession under an agreement of purchase is sold under a judgment, the vendee gets the purchaser's equitable title. (Vieshellen's appeal, 24 Penn. State R., 105.) And in Rickert v. Madaira, 1 Rawle, 329, it is said that the extent of the decisions in Pennsylvania is to subject to execution all possible contingent titles to land accompanied with an estate, property, or real interest in the land, whether that interest be legal or equitable. In Illinois it was held that a purchaser at sheriff's sale of land in which the defendant in execution had but an equitable interest, if he seeks to recover the land, should show that defendant in exe-

cution at the time of the levy and sale had such an equitable interest as could have been enforced in a court of equity.   (Hatch v. Wagner, 15 Ill., 127.)

In North Carolina it was held that the act (29th Charles II.) extends to all cases where the whole beneficial interest is in the defendant in execution, as well when it is created by deed, as when it results from construction of law (Hoke v. Henderson, 1 Dev. & Bat. Eq., 119); and if the trust is a pure and simple one, that is if nothing is to be done but to make the title, it is subject to execution.   (McKay v. Williams, 1 Dev. & Bat. Eq., 405.)

These authorities are thought to be sufficient to establish that F. W. Brewer had such a title in the land in question as could be sold under execution; because the evidence shows that his interest was certain ; that nothing remained to be done but for his father to execute to him a deed ; that he could have compelled his father to specifically execute the contract ; and that he was in possession of the property.

III.   In the former adjudication of this case it was said that if F. W. Brewer had exclusive possession of the land for ten years before the sheriff's sale, he had, by virtue of the seventeenth section of the statute of limitations, "full property, precursive of all other claims," and consequently that the land was liable to be sold under execution.   (See 30 Texas, 307.)

The counsel for appellants contends that ten years' possession was not alleged in the petition, and that therefore evidence of the fact and the finding of the jury to that effect will not avail the appellee.   It is submitted that the original and amended petitions, taken together, fully aver possession by Brewer for ten years. and more.   The jury found that Brewer took possession about the first of March, 1847, and that he continued

16—xxxv

in possession until the sheriff's sale on the fifth of May, 1857; so that the ten years' possession is fully established, and on this ground, if on no other, Brewer's interest was subject to sale.

IV. It is also assigned for error that the court ruled out the deposition of Benjamin L. West. The reason for this ruling, and the circumstances attending it, are set forth in the bill of exceptions. The admissions or declarations of a party, or one with whom he is in privity, are always evidence against, but never for him, unless they are a part of the *res gestæ*. (1 Phil. on Ev., 314 and 402, notes; 1 Greenleaf Ev., 247-8.)

Admissions made after other persons have acquired separate rights in the same subject matter cannot be received to disparage their title, however it may affect that of the declarant himself. (1 Greenleaf, 260.)

Now, what was proposed to be done by the deposition of West? Why, to show title in Caswell Brewer as well as in Francis Brewer. In other words, Caswell Brewer attempted to show title in himself by his own declarations, or by those of his father, under whom he claimed, which was the same as if they had been his own.

That a party cannot thus show title in himself is too well settled to justify further discussion. It may, however, be added, that even if he had shown a gift to himself jointly with his brother, he could have claimed no title under it, because he expended nothing upon the property, and therefore did not bring himself within the exception to the statute. All the improvements upon the property were made by Francis.

V. It is also assigned that the court erred in rendering judgment against Caswell Brewer for rents and profits. To justify this, it is only necessary to call the attention of the court to the fact that he voluntarily

made himself a party to the suit as the landlord of the original defendants, and it was therefore proper to charge him with the profits, instead of his tenants. The counsel for the appellants, however, urge that though such judgment would have been proper if the action had remained one of trespass to try title, yet was improper after the action was changed. They are mistaken as to the fact of the change of the action. It was never changed, but the plaintiff did what he had a right to do, amended his petition by setting out his title. The appellants' admission answers their objection and vindicates the judgment. But if the court should disagree with us on this point we are willing that the judgment be reformed in this respect.

OGDEN, J.—This cause was before this court in 1867, on an appeal by the plaintiff below. The judgment was reversed and the cause remanded. A new trial was had, and a judgment rendered for the plaintiff; and now the defendant has appealed. In the decision of the cause on the former appeal the court reviewed at some length, and with much well founded criticism, the case of Boze v. Davis, in 14 Texas, 341. And it may not be improbable that the review of that case, and the strong intimation of what might be the ruling of the court in this cause, has induced a judgment in the district court which is not supported by authority, and which the learned judge who delivered the opinion on the former appeal would not have approved. That a "mere voluntary defective conveyance," or donation of real estate, will not be enforced, either in a court of law or equity, is too well settled to be now called in question; and Justice Story says, "This doctrine applies equally, whether a party seeks to have the benefit of a contract, a covenant, or a settlement, however merito-

rious may be the consideration, and although the parties may stand in the relation of wife or child." (Story's Eq., 986.)

We have been unable to find any adjudicated case, where a mere voluntary parol promise to convey real estate has been specifically enforced by the courts; but in all cases where a defective conveyance has been enforced in favor of a volunteer, there was necessarily a valuable consideration to support the contract. What that consideration should be, in order to support a promise to convey, is not so clearly settled by the decisions; but that such a promise, or contract, does not necessarily require a pecuniary, or full and adequate consideration to support it, is most definitely settled. So that the party promising is to receive some benefit, or the party to whom the promise is made is to sustain some detriment, in either or both cases, the contract has a valuable consideration to support it. Tried by this rule we have no hesitancy in coming to the conclusion that the parol contract, or promise, set out in the case of Boze v. Davis, was founded on a valuable, if not a sufficient consideration. Davis showed most clearly that he expected a benefit to himself and family, in having his father-in-law near him, which he was willing to pay for, while Boze must have sustained a great pecuniary detriment, or loss, in order to accept the offer of Davis; and we can see no good reason for deciding that there had not an abundant consideration passed, to authorize a specific enforcement of the verbal contract. In the cause referred to, there was a definite proposition by Davis to convey certain land, provided Boze, as a consideration, should do certain things as a condition precedent. Boze fully complied with and performed the condition, and was put in possession of the land by Davis, and equity would have enforced a specific performance as against him.

We have carefully examined the cases referred to, and can find none, excepting Boze v. Davis, which holds to a different doctrine.   In the case of Kirksey v. Kirksey, 8 Ala., 133, there was no specific or definite promise on the part of the defendant, other than contained in his letter to his sister, in which he says, "I will let you have a place to raise your family," without specifying any title, or term of lease, and the court decided the promise a mere gratuity that could not be enforced.   In the case of King v. Thompson, 9 Peters, 204, the court says, "there was not only a good but a valuable consideration," on which account the grant would have been enforced but for the uncertainty of the contract.   The grant in that case was to be made on condition that the grantee should make certain repairs, so as to make the premises to be granted a comfortable residence for the daughter of the grantor.   And in the case of Shepherd v. Bevin, (9 Gill, 35), the consideration, or rather a part of the consideration, was the receipt of five hundred and sixty-one dollars, and the purchaser went into possession of the property and made valuable improvements on the faith of the purchase.   This was held sufficient to authorize the specific enforcement of the contract.   But the case of Neal v. Neal (9 ˙Wallace, 8), is relied on by counsel as settling the question as to the validity of a parol gift of land, in which the court says, "Equity protects a parol gift of land, equally with a parol agreement to sell it, if accompanied by possession, and the donee, induced by the promise to give it, has made valuable improvements on the property."

The language here quoted is direct and unambiguous, and we might feel bound to acquiesce in the decision, had the simple question of a parol gift been presented to the court for its decision.   But it is believed that the

records in that case presented another and quite different question for determination. The learned judge who delivered the opinion very concisely sums up the facts of that case by saying, that from "the whole evidence it is reasonably certain that John E. Neal agreed to give to Mary Hamilton, who was about to marry his son, in furtherance of the marriage, the lot in controversy, for the benefit of herself and children, and for a home for the family, if with her means a suitable dwelling house was erected on it, and that this has been done."

This statement of the facts shows most clearly that the question of gift was not presented by the record, but rather the question of a parol contract to convey land for a valuable consideration, viz., the consideration of marriage and expenditure of money, and upon this latter question the cause was decided. And we can discern no difference in the principle decided in this case from that in King v. Thompson, or Shepherd v. Bevin; and we are disinclined to adopt the mere dictum of the learned judge as a rule of decision until we are enabled to discover the reason or authority for the same.

The facts of the cause before this court are believed to be materially different from those in the cases referred to. It was in proof on the trial that Balaam H. Brewer said in 1846 that he wanted to purchase the lot in question for his boys, and afterwards he was heard to say, on several different occasions, in 1847 and 1848, that he had given the lot to Francis W. Brewer; that Francis W. Brewer went into possession of the premises in the spring of 1847, put improvements on the same, and occupied it for several years. But Balaam H. Brewer died without making any conveyance for the land, or in any manner recognizing the gift by any in-

strument of writing. There is no pretense that Francis W. Brewer paid any consideration for the land, nor that Balaam H. Brewer received any benefit for the conveyance, or promise to convey; nor was there any condition demanded by Balaam H. Brewer of his son Francis W., to induce him to make the conveyance. It was therefore evidently intended to be simply a voluntary donation, or gift, without consideration or condition; and as the same is not evidenced by any written instrument, it must be considered such a defective conveyance as cannot be enforced by law nor helped in equity in favor of a volunteer, or one claiming under him. We do not consider the fact that Francis W. Brewer put valuable improvements on the land, without the request or even consent of the father, as in' any manner effecting an equity in him, which the courts will enforce. The improvements were put there voluntarily, for his own benefit, and with a full knowledge of his rights in the premises; and if he now has any interest in the improvements, that interest must be an uncertain one, which may, however, be determined by a decree of a court, and is therefore not subject to sale under execution.

We are, therefore, of the opinion that Francis W. Brewer, by reason of the gift from his father, received no such title, or interest, in the land in question as he could have enforced through the aid of the courts, or which could have been sold under execution. But at the time of sheriff's sale to the appellee under the execution, Francis W. Brewer may have had an interest in the land sold, as one of the heirs of Balaam H. Brewer, and which interest (if any) was unquestionably conveyed at the sheriff's sale to the appellee, and he is entitled to recover in this suit whatever interest that may be.

The plaintiff's original and amended petitions fail to allege, specifically, ten years possession by Francis W. Brewer; and if he has failed to set up that fact by distinct and proper averments, he certainly was not entitled to the benefit of any proof to establish it (Lucketts v. Townsend, 3 Texas, 128); besides, had the allegations of the petition been full and specific, in setting out the ten years' possession, we are not satisfied that the evidence on the trial, or the charge of the court, authorized the finding of the jury in that particular.

It was proven on the trial that Snediker, during his lifetime, claimed the premises in controversy by reason of a parol contract of sale from C. C. Brewer, and that Snediker remained in possession until his death, and that the property went into the hands of the administrator on Snediker's estate, and was rented out by him. We are not prepared to say what weight this testimony should have had with the jury in determining the time F. W. Brewer was in possession, as no direct issue in regard to that fact was presented to them by the charge of the court. We fail to discover any good and sufficient reason for ruling out the testimony of B. L. West. C. C. Brewer and F. W. Brewer were permitted by the court to interplead as the landlords of Snediker and Cole, and the deposition of West was offered to prove the fact that the gift, if made at all, was made to both the sons, and under the pleadings we think it was admissible for that purpose.

The judgment is therefore reversed, and the cause remanded.

REVERSED AND REMANDED.