P. J. WILLIS & BRO. *v.* L. L. MATTHEWS ET AL.

1. GIFT OF LAND—EQUITY.—Equity will enforce a verbal gift of land, from a father to his son, when clearly established, if it be accompanied by possession, and followed by improvements made on the strength of the gift, with the consent of the father.

2. JUDGMENT—ATTACHMENT LIEN—HOMESTEAD.—A judgment, in a proceeding by attachment, enforcing the attachment lien on land, is not conclusive of the defendant's homestead rights in the land attached, no issue regarding the homestead having been made by the pleadings. The effect of such a judgment is to enforce the attachment lien on whatever interest, subject at the time of the attachment to execution and forced sale, the defendant had in the land : the purpose of an attachment is, to hold the property on which it is levied, so that it may be subjected to execution so far as it is legally liable to execution, and no further.

3. ATTACHMENT—PLEADING.—If the plaintiff in attachment desires to have the question of his homestead right in property attached, settled, in the attachment suit, he should make such amendments to his pleadings as will give the defendant notice that he is called upon to defend his homestead rights, and on principle it would seem that his failure to assert such rights, would be an admission that he had none.

4. HOMESTEAD.—When a rural homestead is fixed upon a tract of land exceeding two hundred acres in quantity, one undivided half interest in the whole tract being the separate property of the wife, and the other half interest, being in equity the separate property of the husband, the husband's interest, subject to forced sale at the suit of creditors, is the undivided interest in the whole tract less two hundred acres, protected as the homestead from forced sale. The exemption is of two hundred acres of the land owned by both, and not of two hundred acres owned by the husband.

APPEAL from Montgomery. Tried below before the Hon. James Masterson.

The opinion states the case.

*N. H. & J. R. Davis*, for appellants.—We maintain that all the right, title, and interest of L. L. Matthews, in and to said land, was and is vested in appellants, by the proceedings and sale in the attachment suit. It is too late for him to insist on a homestead for himself on said land, even if the alleged gift conferred title. He should have made his claim when the former suit was pending, or, perhaps, before sale, he might have raised the question by petition in error. (28 Tex., 446.) It is too late to raise the homestead question, after a decree and sale of foreclosure on a mortgage. (29

Tex., 275; 24 Tex., 172; 20 Tex., 792; 13 Tex., 68; Paschal's Dig., art. 128.) And we ask only the same principle of law in the attachment, lien, decree, and sale.

We respectfully refer the court to the following authorities on the point of the conclusiveness of judgments when collaterally attacked or introduced in another suit: Cooper v. Reynolds, 10 Wall., 308, and cases cited in note; 11 Id., 587; 1 Tex., 309; 24 Tex., 479; 27 Tex., 495; 32 Tex., 464; Lee v. Kingsbury, 13 Tex., 68; Jackson v. De Lancy, 13 Johns., 537.

Did the District Court err in ruling that subsequent creditors could not controvert the validity of a parol gift of land by a father to a son, &c.? We maintain that it was and is error, to the prejudice of appellants; and that, notwithstanding the supposed gift, &c., to L. L. Matthews, from his father, of the undivided half of said five hundred and eighty-one and one-half acres, the same continued the property of the father till his death, and then vested in his (L. W. Matthews) heirs, subject and liable to the payment of his debts. (Paschal's Dig., art. 1373.)

*John R. Peel,* for appellees.—For appellees, it is respectfully contended that the parol gift of L. W. Matthews, deceased, of his half of the five hundred and eighty-one and a half acre tract of land to his son L. L. Matthews, just after his marriage, followed by immediate possession, with valuable improvements, and a continuous occupation of the same by appellees as their homestead, until dispossessed by appellants, was a completed gift, and a valid alienation of the land. (Neale v. Neale, 9 Wall., 1; Richardson v. Rhodes, 14 Rich., (S. C.,) 95; Howard v. Windham et al., 40 Vt., 597; Appleby v. Anthony, 1 Wash., 287.)

If appellee, L. L. Matthews, could have held the land against the donor, L. W. Matthews, his father, surely, at this late day, he can hold it against appellants, attacking it collaterally, and who have not shown, by presenting their claims in evidence, that they were valid, duly allowed and approved,

and subsisting against L. W. Matthews, deceased, at the time (1860) the said parol gift, &c., was made; and certainly this burden of proof was upon them. But at the time (1860) the gift was made, it is shown in evidence that the donor, L. W. Matthews, deceased, was worth, in his own right, some $40,000, over and above all liabilities and exemptions. Richardson *v.* Rhodes, 14 Rich., (S. C.,) 95; Millican *v.* Millican, 24 Tex., 226; Saufly *v.* Jackson, 16 Tex., 579.)

. But in this case, appellants are and were creditors of L. W. Matthews, deceased, subsequent to the gift of said land to L. L. Matthews, with full notice of the gift, possession, &c., and cannot be heard to complain. (Sexton *v.* Wheaton, 8 Wheat., 229; Hopkisk *v.* Randolph, 2 Brook., 132; Verplank *v.* Sterry, 12 Johns., 536.)

GOULD, ASSOCIATE JUSTICE.—In April, 1860, at the time of the marriage of L. L. Matthews to Laura Sapp, the five hundred and eighty-one and a half acres of land in controversy in this suit was owned by H. N. Jones and L. W. Matthews, father of L. L. In June following, Jones sold and conveyed his undivided interest to L. L. Matthews, the purchase-money being subsequently paid out of the separate means of the wife. Immediately after this purchase, it is claimed that the father, L. W. Matthews, made to his son a verbal gift of the other undivided half interest in the land, placed him in possession, and told him to make his home thereon, and that the tract was forthwith improved and occupied as a homestead, and was so occupied at the time of the death of Mrs. Matthews, in the fall of 1868. Shortly after her death, L. L. Matthews rented out the place for the year 1869, and went with his children to the State of Georgia, where he remained until the winter of 1869, at which time he returned, and found his late home in the possession of appellants, Willis & Bro. Previous to his departure, Willis & Bro. had brought suit against him on a promissory note, obtained service, had sued out an attachment, which was levied on the five hun-

dred and eighty-one and a half acres of land in controversy, subject, however, to his homestead, and afterwards there was an additional levy on the entire tract, without reserve, the levy reciting that he and his family had abandoned the premises and the State. In due time, Willis & Bro. had judgment by default for their demand, and for the enforcement of their attachment lien, and when, in February, 1869, the land was sold under an order of sale, in pursuance of this judgment, they became the purchasers, for the sum of $100. In August, 1872, L. L. Matthews brought this suit against Willis & Bro., to recover possession, claiming his homestead of two hundred acres, and claiming, in behalf of his children, who were made parties plaintiff, that they, as heirs of their deceased mother, were the owners of the undivided half of the tract, and praying for partition accordingly.

In their answer, Willis & Bro. set up their title as purchasers at the sale before stated. They also set up title to the undivided half of the tract, as purchasers at another sale had after this suit was instituted, under another judgment, also by default, in their favor, against L. L. Matthews and some others of the heirs of L. W. Matthews, deceased, which judgment directed execution to be levied on property inherited by or partitioned to defendants from the estate of the deceased.

It seems that in 1864, L. W. Matthews was dead; that he died indebted to Willis & Bro.; that there was an attempted partition of his estate by the County Court amongst some of the heirs, and that in that partition the undivided interest in the tract of land in question was treated as a part of the estate, and was allotted to L. L. Matthews. Under the instructions of the court, however, the jury evidently found that there was a valid verbal gift by the father to the son, and that the equitable title to the undivided half of the land was in L. L. Matthews, by virtue of that gift.

That there may be a valid verbal gift of lands by the father to the son, which equity will enforce, if it be clearly estab-

lished, be accompanied by possession, and followed by valuable improvements made upon the faith of the gift, and with the consent of the father, is now the recognized rule in this court, settled after elaborate and repeated argument and investigation. (Murphy v. Stell, 43 Tex., 133; Hendricks v. Snediker, 30 Tex., 296; and see Curlin v. Hendricks, 35 Tex., 225.)

Although the averments of the petition and the facts detailed in the evidence, on this point, are neither as full nor explicit as they should have been, yet we are not prepared to say that there was such a deficiency as calls for a reversal of the cause.

The court did not err in declining to rule, that the judgment enforcing the attachment lien was conclusive of appellee's homestead rights. The effect of that judgment was to enforce the attachment lien on whatever interest L. L. Matthews had in the property attached, subject at the time it was attached, to execution and forced sale. The purpose of the attachment is to hold the property so that it may be subjected to the execution, so far as legally liable to execution, and no further. It may be that, if the attachment is levied on exempt property, the defendant in attachment could, by a plea in abatement, have the levy set aside. But, unless the issue is made by the pleadings, the court does not pass upon the question of whether the property is or is not a homestead, and its judgment is neither "directly on the point, nor does it necessarily involve the decision of the question." (Tadlock v. Eccles, 20 Tex., 790.) The cases referred to by counsel are, either cases where suit was brought to foreclose a mortgage, and after such foreclosure the defendant was held precluded from setting up the defense which he should have made and which went to the very issue presented by the plaintiff's pleadings, or they are cases which only assert the settled rule, that a valid judgment cannot be collaterally attacked. No case has been cited supporting the proposition contended for. On principle, it would seem

that if the plaintiff in attachment wishes to have the question of homestead settled in the attachment suit, he should make such amendments to his pleadings as would give the defendant notice that he is called upon to defend his homestead rights, and that his failure to assert such rights will be an admission that he has none.

But the claim of L. L. Matthews was, (and by the charge, the verdict, and the judgment, it was allowed,) that he was entitled to have his homestead of two hundred acres out of the tract as he might select; that his children, out of the remainder, should have set apart a number of acres, equal to half of the entire tract, and that it was only the surplus to which Willis & Bro. acquired any right. In this there was error. The evidence was, that the homestead was established on land, one undivided half of which was the wife's separate estate, and the other, in equity, the husband's. The homestead, unquestionably, may be established, and will be protected on land so owned. So long as it remains so fixed, the exemption is of two hundred acres of the land so owned, and not of two hundred acres owned by the husband. If whilst it is so fixed, a creditor acquires a lien on other land, or on the excess of the homestead tract, it is then too late for the homestead claimant to make a change which will affect that right. His homestead is protected where he himself has fixed it, and not elsewhere. In this case the homestead, as fixed and protected, was as much on the land of the wife, as on the land of the husband; and it was error to allow the husband to fix it elsewhere. The right to select a homestead does not give a right to change it to the prejudice of the vested rights of others. For the error on this point, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.