No. 2334.

## P. J. WILLIS & BRO. *v.* J. C. MCINTYRE

1. FRAUD—DEBTOR AND CREDITOR.—One in possession of land under a parol gift claiming it as his own, and who afterwards receives a deed for the same, can not be affected by the claim of a creditor of the donor when the credit was extended after the date of the parol gift, and after actual occupancy of the donee.
2. SAME.—In an action by the creditor against the donee to subject the property to the payment of a note given by the donor, which covered items of indebtedness antedating the parol gift, as also debits subsesequent to the gift, it was shown that the creditor received cotton from time to time from the debtor. If it was the agreement between the debtor and creditor that the proceeds of sales of such cotton should be applied to the payment of debts antedating the parol gift, the donee can, in his protection, enforce such an application of the proceeds of sales.
3. APPROPRITION OF PAYMENTS.—When there is a continous account consisting of many items, if no appropriation of payments to specific items is made by either party, they will be applied in accordance with the priority of dates of the items of account. If no specific appropriation of payments be made by either party until rights of third parties holding under the debtor had been created of such a character as to authorize against him their enforcement, the creditor can not so appropriate payments made by the debtor as to affect such rights, if, by a different appropriation, they can be protected.
4. CASES REVIEWED.—Miller v. Miller, 23 Maine, 24; Barker v. Conrad, 12 Sergeant & Rawle, 304, and Burgess v. Alter, 9 Watts, 386, reviewed.
5. APPROPRIATION OF PAYMENTS.—The right of the debtor to appropriate to specific items payments made on account will be denied when necessary for the protection of one having equities against the debtor, which would authorize against the latter a decree for specific performance of a verbal gift of land.

APPEAL from Grimes. Tried below before the Hon. Norman G. Kittrell.

*W. W. Meacham* and *H. H. Boone,* for appellants: The gift of property by a debtor, which is not, upon consideration, deemed valuable in law, is void as to prior creditors, unless it appears that such debtor was then possessed of property within this State subject to execution sufficient to pay his existing debts, citing Revised Statutes, article 2466, page 363; Cox v. Shropshire, 25 Texas, 126.

A parol gift of real estate at a time when the debtor is insolvent or is about to engage in some hazardous business, or when

obligations are incurred so soon after the gift as to warrant a presumption that actual fraud was intended, or other unusual circumstances lead to the same inference, is, in a legal sense, fraudulent and void both as to existing and subsequent credit-itors, citing Revised Statutes, articles 2464, 2465; Waterman on Specific Performance of Contracts, 460, section 341, note 1; Traylor v. Townsend, 61 Texas, 144.

To sustain a parol gift of lands followed by possession and large expenditure in improvements thereon by the grantee, it is necessary that the terms and conditions of such contract be clear, and that possession was taken and improvements made on the strength of it.   Possession and occupation by the child, and expectation of gift by the child will not be sufficient to bring the case within the rule.   (Murphy v. Stell, 43 Texas, 124; Eason v. Eason, 61 Texas, 225; Montgomery v. Carleton, 56 Texas, 361; Hendricks v. Snediker, 30 Texas, 296.)

*McDaniel & Buffington,* for appellees.

STAYTON, ASSOCIATE JUSTICE.   This is an action of trespass to try title, instituted by the appellants to recover three hun-dred and sixteen and three-quarter acres of land.   The defend-ants disclaimed as to fifty-two acres, but the defendants McJun-kins and Garvin asserted title to the remainder.   Mrs. Garvin and Mrs. McJunkins were daughters of J. C. McIntyre, who was the owner of the land prior to December, 1878.   In that month McIntyre made a parol gift of one hundred and thirty-two and three-eighths acres of the land to his daughter, Mrs. Garvin, and her husband, and in the following March he made a gift in the same manner to Mrs. McJunkins and her husband for the same quantity of the land.   These parties, im-mediately after the gifts were made, entered into possession of the tracts to them severally given, and have continuously held them since; during this time, and prior to the time appellant caused an attachment to be levied on the land, Garvin had made permanent and valuable improvements on the land given to himself and wife, which the judge trying the case valued at five hundred and seventy-five dollars; and during the same time McJunkins and wife had made like improvements on the land given to them, which were valued at three hundred and seventy-five dollars.   The land was worth about four dollars per acre, and encumbered with a vendor's lien for about six

hundred and fifty dollars, which was discharged by one of the donees. Subsequently to the levy of a writ of attachment sued out by the appellants, in an action brought by them against McIntyre, the latter executed deeds to the persons to whom he had made verbal gifts in accordance with the gifts. Deeds seem to have been prepared soon after the gifts were made, but for some reason were not executed and delivered.

On February 22, 1881, appellants brought an action against McIntyre on a note for three thousand four hundred and seventy-one dollars and forty-four cents, executed to them by McIntyre March 1, 1880, and due on October 1 following. In that case a writ of attachment issued which was levied on the land in controversy on February 23, 1881. A judgment was rendered in that cause against McIntyre on April 14, 1882, foreclosing the attachment lien, under which the land was sold and bought by the appellants, who received a deed from the sheriff dated June 6, 1882. This cause was tried without a jury, and the court gave conclusions of fact and law.

From the conclusions of fact, as well as from the statement of fact, it appears that the appellants were wholesale merchants doing business in Galveston, and that McIntyre was a retail merchant doing business in Grimes county, and that between them, from about the year 1868, a business had been conducted as is usual between such merchants. After stating that statements of balances were frequently made by appellants, the third finding is as follow: "That such balances were frequently closed by note, and then other purchases were made on open account, and frequently when notes were given to cover balances, McIntyre had cotton in hands of plaintiffs. When cotton was sold the notes or open balance due on last statement and amount of subsequent purchases were added together as a debt, and the proceeds of cotton credited against it, and the balances again brought down, and thus from year to year, the debt being for a greater or less amount against McIntyre as payments were appropriated by plaintiffs." This shows the general course of dealing between the parties, which continued until about December 7, 1880.

The further finding is as follows: "McIntyre had frequently cotton sufficient in hands of plaintiffs to cover, or practically so, the balances stated on several settlements, but not enough to cover purchases of goods and drafts paid by plaintiffs be-

tween the time such balances were struck and the time the cotton was sold and credited."

The thirteenth finding was: "That as to the indebtedness existing to Willis & Bro. at the time of these gifts McIntyre shipped ample cotton to cancel the same, but continued to buy other goods."

After finding that the gifts were not made with fraudulent intent, the court found "that in a legal sense, and under all the facts, McIntyre was in such condition of solvency at the time of the gifts as to warrant him in making them and leave him abundantly able to pay his debts then existing."

McIntyre stated that in the spring of 1880, he "went down and made a bill of about three thousand dollars more or less. I told Willis & Bro. I could not pay the bill till fall, and he said close it by note, and I did so, and that was the note I was sued on in Galveston. I owed nothing but that note, and had cotton in the hands of Willis & Bro. which they agreed to place as a credit on the note. They sold and placed as a credit, but not, it seems, on the note. I shipped cotton enough to cover note or more, am sure." He further stated that the note for three thousand four hundred and seventy-one dollars and forty-four cents due October 1880, was for goods bought on the day it was executed, and not for balances.

The account of appellants offered in evidence shows that McIntyre was credited with two thousand six hundred and ninety-five dollars and ninety-five cents, of date February 26, 1880, which was the net proceeds of fifty bales of cotton; that February 11, 1881, he was credited with two thousand two hundred and eighteen dollars and thirty-one cents as the net proceeds of forty-five bales, and that on March 1, 1881, he was credited with one hundred and forty-nine dollars and forty-two cents as the net proceeds of three bales of cotton. On September 25, 1880, he was credited by cash one thousand dollars, and on October 9 with a like sum. · After the execution of the note made the basis of the attachment suit, McIntyre bought goods to the value of something less than three thousand seven hundred dollars, and on statement of account, made March 1, 1881, the balance in favor of appellants was three thousand one hundred dollars and thirty-two cents.

The evidence of McIntyre as to the agreement to appropriate the proceeds of cotton to the payment of the note on which the judgment in favor of appellants was obtained was not con-

troverted, but all the credits to which we have referred were placed on the general account, into which the note was carried.

The account offered in evidence by the appellants shows that on March 25, 1880, the note for three thousand four hundred and seventy-one dollars and forty-four cents evidenced the only matter of indebtedness between them, and if that was given for goods bought on the day of its execution, appellants were not antecedent creditors who would have right to attack the gifts made by McIntyre to his children. Before the date of that note the donees were in possession of that land, as were they when it was executed, and the appellants as subsequent creditors having notice of their rights could not look to that property for the payment of their debt.

If the note for three thousand four hundred and seventy-one dollars and forty-four cents included balances existing at the time the gifts were made, as well as the price of goods sold at the time of its execution, which is evidently true if the appellant's statement of the account is correct, then the appellees would have the right to have the proceeds of cotton applied to its payment, if it was the agreement between appellants and McIntyre that this should be done. Whether in the absence of such an agreement they could assert such a right against an actual appropriation made by the appellants in the absence of an appropriation by McIntyre need not be considered.

It appears that the note of date March 1, 1880, was carried with the general account by appellants, and that the judgment obtained on it was only for the balance due on the general account; and it does not appear that payments made by McIntyre were appropriated to any particular parts of the general account, except as this may have been done by bringing suit on February 22, 1881, on the note executed March 1, 1880. It appears from the statement of account made by the appellants that McIntyre was indebted to them five thousand and seventy-eight dollars and thirty cents on January 1, 1878. From January 1, 1878, to December 1, 1878, McIntyre paid six thousand two hundred and thirty dollars and seventy-four cents, and in same time bought five thousand nine hundred and fifty dollars and sixty-five cents, leaving a credit of two hundred and eighty dollars and nine cents. From December 1, 1878, to June 7, 1879, McIntyre paid four thousand one hundred and ninety-one dollars and ninety-one cents and bought five thousand four hundred and fifty-nine dollars and nine cents (but of this only

eight hundred and fifty-three dollars and eighty-six cents was bought before the last gift was made), increasing his account one thousand two hundred and sixty-seven dollars and eighteen cents. From June 1, 1879, to January, 1880, McIntyre paid five thousand and forty-four dollars and forty cents, nearly all which was offset by purchases. From January 1, 1880, to January 1, 1881, he paid two thousand and sixty-five dollars and ninety-seven cents and received one thousand four hundred and forty-seven dollars and forty-four cents, and between January 1, 1881, and January 1, 1882, he paid two thousand three hundred and sixty-seven dollars and seventy-three cents, which was passed to his credit on the general account, as were all payments made.

From this statement it will be seen that more money was paid by McIntyre on the general account, if his statement as to the agreement as to appropriation of proceeds of cotton is true, than was necessary to extinguish all indebtedness accruing prior to the time the gifts were made. The account as presented must be deemed one continuous account; and as there is no claim that payments were credited to specific items of the account by the appellants prior to February 22, 1881, we see no reason why the ordinary rule for the appropriation of payments should not be enforced in this case. It would have been the right of McIntyre to have the payments appropriated as he desired, and in the absence of an appropriation by him it was the right of the appellants to make the appropriation as they thought most to their interest, provided the right of no third person had intervened before they exercised this right.

When there is a continuous account, consisting of many items, if no appropriation of payments is made by either party, they will be applied according to the priority of time. The first item on the debit will be discharged, or so far satisfied as the first payment may extend, and in this order will every payment be appropriated. This is the rule asserted by all the authorities. It has been given application in cases much like the present. (Bodenham v. Purchas, 2 B. & Ald., 46; Trescott v. King, 6 N. Y., 147; Harrison v. Johnson, 27 Ala., 452; Compton v. Pratt, 105 Mass., 255.)

Not having appropriated the payments made until the rights of the persons holding under McIntyre were such as might be enforced against him, could the appellants thereafter make the

appropriation in such manner as to affect their rights? The court below, in effect, held not.

The rights of a creditor—as between him and the debtor, who has not appropriated a payment—at any time to make the appriation has been recognized; but this right has been denied, even when its exercise would only affect the right of one holding through the debtor by a conveyance fraudulent as to creditors existing at the time the conveyance was made.

This was held in Miller v. Miller (23 Maine, 24), upon the ground that, as between the grantor and such a grantee, the conveyance is binding, and as no one other than a creditor holding a prior debt can assert its invalidity, even such a grantee may show that on proper appropriation of payments the creditor had no debt at the time the conveyance to himself took effect.

In Barker v. Conrad (12 S. & B., 304), it appeared that a lumber merchant had separate liens for lumber furnished for two houses, and received a payment from the debtor of which no actual appropriation was made by the debtor or creditor until after a purchaser without notice of the lien had acquired title to the property upon which one of the liens existed, when the creditor attempted to appropriate the payment made on the debt, to secure which a lien might have been perpetuated by filing his lien, which, however was not done. It was held that his right time so to appropriate the payment was lost, and the payment made was appropriated on the debt that first accrued.

In Berghaus v. Alter, 9 Watts, 386, it appeared that Berghaus purchased at different times several bills of goods on a credit, and gave note therefor with security, which was payable in twelve months, and subsequently he made other purchases on the same terms before the note became due, after which he made payments which were credited generally on the books of Alter, without any specific appropriation. The seller subsequently attempted, with the consent of the buyer, to appropriate the payments to the payment of the debts last created, but the court said: "It is true, however, that a different appropriation was made afterwards, between the plaintiff and George H. Berghaus, but this was some time after the law had interposed itself and made the appropriation which would go in discharge of the debt for which the note was given. And had no one been interested in the appropriation made by law of the moneys previously received, it would have been

perfectly competent for them, by their subsequent agreement, to have changed the appropriation so made by law as they pleased. But then the previous appropriation made by law must, to discharge the defendant below, who, being a mere surety, derived no benefit whatever from the debt, and being once discharged from his liability as such, his obligation could not be received." Many other cases assert the same principles. (Madison v. Johnson, 27 Ala., 452; Compton v. Pratt, 105 Mass., 257.)

Those cases deny the right of the creditor at all times, and against all persons, to appropriate when the debtor has not done so, and if the law forbids this on account of equities arising between a principal and surety, and in such cases, in the absence of an actual appropriation by the debtor or creditor at the time the payment is made, appropriates it on the oldest items of a general account consisting of items bought at different times, we see no reason why the same protection should not be given to one having equities against his debtor such as would authorize against him a decree for specific performance of a verbal gift of land.

In the one the security—a person—is discharged by the appropriation the law makes; in the other the property ought to be relieved from liability—discharged from suretyship—by the operation of the same law whenever equities calling for this have existence between the debtor and a third person.

The court found that the verbal gifts were not made with an intention to defraud, and the mere fact that McIntyre may have been in debt at the time he made them will not invalidate them, but it is claimed that, exclusive of the property given to his children, he had not sufficient subject to execution and openly held to pay all the debts he then owed. The court found to the contrary, and an examination of all the evidence would not justify our holding that the finding was incorrect. In fact, if the evidence introduced by the appellees is to be believed McIntyre had ample means to pay all his debts until 1881, when by a misfortune not to be anticipated, he suffered a loss which deprived him of capacity to do so. For nearly two years after the gifts were made, and while the facts were transpiring on which the equities of the appellees are based, with notice of them, the appellants continued to extend large credit to McIntyre, as is evidenced by the account they render.

The court also held that the facts shown were such as, between McIntyre and his daughters and their husbands, would entitle the latter to specific performance of the verbal gifts, and we are not prepared to hold, looking to all the evidence, that this holding was erroneous. (Curtin v. Hendricks, 35 Texas, 225; Murphy v. Stell, 43 Texas, 123; Willis v. Mathews. 46 Texas, 478; Van Bibber v. Mathis, 52 Texas, 409.)

From this it follows, even if we could hold that the judgment through which the appellants claim was rendered on a debt created before the verbal gifts were made, that the judgment must be affirmed, and it is so ordered.

*Affirmed.*

**Opinion delivered February 14, 1888.**