U. Q. THOMAS v. WILLIAMS & BONNER.

1. HOMESTEAD ABANDONMENT.—The removal from a homestead to a village, for the purpose of educating the children of the family, and the contracting for a new homestead, will not necessarily evidence an abandonment of the homestead.

2. FACT CASE.—See facts held insufficient to establish an abandonment of a homestead.

3. HOMESTEAD—DECLARATIONS OF HUSBAND.—The mere declarations
of the husband, or of third persons, though ever so fraudulent, if
false do not prevent the assertion of the homestead exemption by
the husband and wife.
4. SAME—DECLARATIONS OF WIFE—ESTOPPEL.—Neither the declar-
ations of the wife, nor her written recognition or ratification of
previous deeds by her husband not in conformity with the statutes
regulating conveyances by married women, but which are not shown
to have misled the parties claiming under the deeds from the hus-
band to their injury, will estop the wife from asserting her home-
stead rights.

APPEAL from Hopkins.    Tried below before the Hon.
Green J. Clark.

December 1, 1876, Williams & Bonner brought an action
of trespass to try title for one hundred acres of land in Hop-
kins county against U. Q. Thomas.

The defendant pleaded not guilty.    Both parties claimed
under the same title.    Williams & Bonner claimed under a
sale made April 7, 1874, under a trust deed made for their
benefit, and to secure them a loan of $500 made to W. T.
Prather.    The trust deed was made by Prather alone, rep-
resenting, at the time he obtained the money, that the land
was not his homestead, and that he resided with his family
in, and had a homestead in Sulphur Springs.    The trust
deed bore date December 31, 1872.

After the maturity of the loan, and before the trust sale,
plaintiffs' letters to W. T. Prather were answered by his
wife, promising to pay as soon as the husband should become
able to travel.    The letters also fully recognized the right
of plaintiffs under the trust deed.    In November, 1873,
Prather and wife moved back upon the land mortgaged, and
signed an acknowledgment, indorsed upon the trust deed, as
follows:

" HOPKINS COUNTY, *November* 25, 1873.

This is to certify that we this day move upon the place
within described, by the permission of Williams & Bonner,
and will hold possession only on their account."

May 25, 1875, Prather and wife sold the land to the defendant Thomas, by deed duly acknowledged.

Judgment was rendered for Williams & Bonner. Thomas appealed.

The additional facts are given in the opinion.

*C. Payne,* for appellant, cited and discussed 1 Greenl. Ev., sec. 50; Paschal's Dig., arts. 3720, 3726; Wall *v.* Brewer, 23 Tex., 585; Lacey *v.* Clements, 36 Tex., 665; Stone *v.* Darnell, 20 Tex., 11; H. & G. N. R. R. Co. *v.* Winter, 44 Tex., 612; Green *v.* Crow, 17 Tex., 180; Mills *v.* Von Boskirk, 32 Tex., 360; Franklin *v.* Coffee, 18 Tex., 413; Shepherd *v.* Cassiday, 20 Tex., 25; Eckhardt *v.* Schlecht, 29 Tex., 129; Welsh *v.* Rice, 31 Tex., 688; Ross *v.* Lister, 14 Tex., 469; Berry *v.* Donley, 26 Tex., 737; Chandler *v.* Meckling, 22 Tex., 41; Mullins *v.* The State, 37 Tex., 337.

*Hunter & Putman,* for appellees.

I. The land in question was not the homestead of Prather and wife at the date of the deed in trust to Williams & Bonner.

W. T. Prather and wife moved away from the Thomas place in October, 1872. W. T. Prather, being the head of the family, and no fraud alleged or proven against the husband, as respects the homestead rights of the wife, told T. R. Bonner, before and at the time of the execution of the deed to Williams & Bonner, that it was not his homestead; that the Tumlin place, in Sulphur Springs, upon which he and his wife were then residing, was his homestead.

Mrs. Josephine Prather wrote Williams & Bonner letters concerning the matter before the sale made by the trustees, in which she did not set up any homestead claims, but recognized the right of the trustees to sell under the deed in trust.

Prather and wife both went upon the land in November, 1873, under a written agreement to hold under and for account of Williams & Bonner. (Holliman *v.* Smith, 39 Tex., 362.)

II. After the conveyance to Williams & Bonner, and before

their conveyance to Jennie E. Strickland on the 25th of May, 1875, Prather and wife abandoned their homestead rights in the land in question and acquired another homestead in Sulphur Springs.

After Prather's conveyance to Williams & Bonner, made December 31, 1872, and after the purchase of Williams & Bonner at the trustee's sale, April 7, 1874, Prather and wife conveyed the same land, by attorney in fact, to Jennie E. Strickland, May 25, 1875. After the conveyance to Williams & Bonner and before the conveyance to Strickland they had acquired another homestead—twice. The last acquisition they still hold and enjoy.

Mrs. Tumlin, appellant's witness, says they told her they wanted to live in Sulphur Springs to educate their children. They bought the Tumlin place from her during the year 1873, and resided upon it until the fall of 1873. Prather paid her for the place in Western lands and in a mule rated at $150. She afterwards learned that the title to the Western lands was not perfect, when the sale was revoked by mutual consent; and she got her place back, but kept the mule at $150. Upon surrendering their newly-acquired home back to Mrs. Tumlin they leave for the Thomas place, and upon their departure they conceive, for the first time, an intention to defraud Williams & Bonner.

They again bought the Tumlin place for a homestead from Mrs. Tumlin's sons in December, 1874, and took possession, to one of whom Mrs. Tumlin had conveyed it. On that purchase Prather paid the $150 due him for the mule on the first trade, $250 in other property, executed and delivered his note for $1,000, and Prather was to let her have the Thomas place, to which she moved at the time. Learning that Prather and wife had afterwards conveyed the Thomas place to Strickland, she left that place, never having got any title to it, and sued for the Tumlin place back. At the time Prather purchased the Tumlin place the last time he and his wife said "they wanted it for a home." They have been in posses-

sion of it ever since, claiming it under their purchase from her sons.

John Shook testified that during the years 1874 and 1875 Mrs. Prather, while her husband was run off from the county, tried to sell him all or any part of the Tumlin place, upon which she was at that time residing with her family, and she told him that her title was good, and that she had claimed it as her homestead ever since she had been there.

Gus. Garrison testified that he had lived as a neighbor to Prather and wife ever since the fall of 1874; had frequent conversations with both Prather and his wife, and had heard them both frequently say that the Tumlin place, upon which they had resided ever since they bought of Tumlin, was their homestead; knows they have had their household furniture there, have cultivated it, made improvements on it, have used it as their homestead, and have often tried to sell it to him and others, proposing to make a good title. They have claimed it as their homestead ever since they bought it of Tumlin.

· C. Denton, one of appellant's witnesses, on cross-examination, testified that Prather and wife had cultivated it, had lived in the house with their children, had their furniture there, and have used the place as a homestead every year since they have been there; had heard them claim it as their homestead frequently. They had claimed it as their homestead all the time, ever since they bought it of Mrs. Tumlin's sons, in December, 1874. (Stewart v. Mackey, 16 Tex., 57; Holliman v. Smith, 39 Tex., 362.)

MOORE, CHIEF JUSTICE.—Without a radical departure from what has been hitherto regarded as settled law, by an almost unbroken line of decisions of this court, it cannot be insisted that the mere removal of Prather and wife from the land in controversy to Sulphur Springs operated *ipso facto* an abandonment of it as their homestead, so as subject it to alienation or incumbrance by the husband without the consent of the wife at the date of the trust deed given by Prather to·

18

appellees. (Shepherd *v.* Cassiday, 20 Tex., 25; Gouhenant *v.* Cockrell, 20 Tex., 96; Franklin *v.* Coffee, 18 Tex., 413; Eckhardt *v.* Schlecht, 29 Tex., 129.)

We are not to be understood, however, as intimating that in no case can the homestead be regarded as abandoned in favor of creditors, or purchasers from the husband without the joinder of the wife, until another homestead has been actually acquired; or that the husband and wife, or the wife alone, if he refuses to join her, may successfully assert a right to their former homestead at any indefinite period after leaving it, because of the husband's voluntary or involuntary failure to pay for another place for which he may have contracted with the intent of making it their home for the future. (Woolfolk *v.* Rickets, 41 Tex., 358; Woolfolk *v.* Rickets, 48 Tex., 28.) But, we say, whatever might be our views if it were an original question, in the language of Judge Hemphill, if "a homestead may be disrobed of its guaranties and the protection lost" before "a new and permanent one has been acquired," "it must be undeniably clear, and beyond almost the shadow, at least, of all reasonable ground of dispute, that there has been a total abandonment, with an intention not to return and claim the exemption." (Gouhenant *v.* Cockrell, *supra.*)

It cannot be questioned that the land in controversy was the homestead of Prather and wife prior to the fall of 1872. The only evidence of its abandonment, aside from the mere declarations of Prather and those of a party who gave him a letter of introduction to appellees, is the statement of Mrs. Tumlin, to the effect that in the fall of 1872 she rented a place of fourteen acres in Sulphur Springs to Prather and wife; (to which they moved, as other witnesses testify, late in the fall;) "that they said they wanted to live in town to educate their children." But whether this purpose could be accomplished by a mere temporary residence, or would have to be of a comparatively permanent character, is not attempted to be shown. Thus stood the matter at the date

of the deed of Prather to appellees.   Certainly the evidence does not warrant the conclusion that this land had, beyond all shadow of doubt, been permanently abandoned by Prather and wife as their homestead, with intention not to return, whether they should succeed in acquiring a new homestead in Sulphur Springs or not.   And if it is insisted that although their former homestead may not have been "disrobed of its guaranties" when Prather executed the deed to appellees, if another homestead was acquired before the sale of the land under the deed this would be just as effectual against the homestead claim as if a new homestead had been acquired prior to the date of the husband's deed, still this would be of no advantage to appellees.

Mrs. Tumlin testifies that she agreed, some time in the year 1873, to sell or exchange to Prather the place which he rented of her "for lands out West"; but she also says that afterwards, having "learned that his title to those lands was not good, the trade was recanted, no writing having been signed."   Certainly this mere unconsummated negotiation by the husband for a new home, cannot be held to give effect to his previous deed, in which the wife did not join, to the old one.

The mere declarations of the husband or of third parties, though ever so fraudulent, if false, do not bar or prevent the assertion of the homestead exemption by the husband and wife.   Nor will the declarations of the wife, nor her written recognition and ratification of the previous deed of her husband not in conformity with the statute regulating conveyances by married women, but which are not shown to have misled the parties claiming under the deed from her husband to their injury, estop her from asserting her homestead rights.

In the fall of 1873, and without having acquired a permanent home elsewhere, Prather and wife returned to the old place, and were residing upon it as their homestead when it was sold by appellees under the trust deed.   The homestead never having been abandoned, this sale was inoperative and

void.   The fact that Prather and wife, afterwards, again left the land, and after selling it claimed to have acquired a permanent domicil elsewhere,—to which point the greater part of appellees' testimony seems to have been addressed,—in no way tends to the legitimate proof of its abandonment as the homestead of the family prior to Prather's deed to appellees, or warranted its sale under this deed.

While a careful examination of the evidence impresses us with the painful conviction that the humane and beneficent provision of the Constitution exempting homesteads from sale by the husband without the consent of the wife, expressed in the manner prescribed by statute, has been used, at least by the husband, to practice a gross and palpable fraud, still we are forced to say that the evidence is clearly insufficient, in the light of the former decisions of the court, to support the judgment.   It must, therefore, be reversed and the cause remanded for another trial.

REVERSED AND REMANDED.

[Justice BONNER did not sit in this case.]