**EARHART et al. v. AGNEW. (No. 130–3019.)**

(Commission of Appeals of Texas, Section B. June 2, 1920.)

**I. Fraudulent conveyances ⬅57(5)—Solvent husband had right to transfer notes to wife.**

A husband who was solvent when he transferred to his wife part of notes received in payment for their land claimed as a homestead had the right to do with his property as he saw fit, even to giving it to strangers, and had the right to give his wife half the proceeds of the community property sold by them by joint deed, which she demanded and received as a condition to signing.

**2. Evidence ⬅248(6)—Statement of husband in derogation of title of wife to notes received for community land could not affect her rights.**

No statement of a husband, verbal or written, in derogation of title of his wife to part of the notes received by him on sale of their community land claimed as a homestead, made after the transfer to the buyer, could affect the rights of the wife in the notes received by her.

**3. Husband and wife ⬅149(1)—Wife's property not liable for husband's debts.**

A wife's property, consisting of part of the notes received by her and her husband on sale of their community land, having been delivered to the wife by the husband as a condition of her joining in the deed, were not liable for the debts of the husband.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by J. W. Agnew against S. M. Earhart, with the Lubbock State Bank as garnishee, in which Mrs. S. M. Earhart intervened and claimed the fund impounded by the garnishment proceeding. From judgment for plaintiff, defendant and intervener appealed to the Court of Civil Appeals, which affirmed (190 S. W. 1140), and defendant and the intervener bring error. Judgment of the district court and Court of Civil Appeals reversed, and judgment rendered for the intervener on recommendation of the Commission of Appeals.

R. A. Sowder, of Lubbock, for plaintiffs in error.

W. F. Schenk and Roscoe Wilson, both of Lubbock, for defendant in error.

Statement of the Case.

KITTRELL, J. This was an action in the form of a garnishment against the Lubbock State Bank procured for the purpose of reaching certain funds claimed to be the property of T. O. Earhart, husband of the plaintiff in error.

The number of the case on the docket of the district court of Lubbock county was 906, and it was ancillary to a case filed by Agnew, defendant in error, No. 881, in the same court against T. O. Earhart.

The basis of the action in No. 881 was a certain bond executed by one B. F. Montgomery on October 15, 1909, to Agnew to protect him against outstanding vendors lien notes against certain land which Agnew had bought of Montgomery. T. O. Earhart and one Richmond were sureties on the bond, which was for the sum of $6,000, or double the amount of the notes.

It appears from the testimony of Agnew that he did not know that Earhart was on the bond until about two years after it was made, but supposed it was his brother, the bond having been prepared by Agnew's attorney, and he never saw it for about two years, and he had never made any demand on Earhart on account of it.

On June 24, 1913, the holders of the Montgomery notes recovered judgment, and the land was sold.

Some time prior to December 28, 1914, Agnew brought suit on the Montgomery bond against Montgomery, Earhart, and Richmond, but before judgment dismissed as against Richmond without reservation, but as to Earhart he dismissed without prejudice to maintain action at some future time. He took judgment against Montgomery alone for $3,500.

No further action appears to have been taken against Earhart by Agnew until suit No. 881 was filed.

Earhart testified that he had never been called upon to pay the bond, and supposed the notes had been paid. He never agreed to their extension, and that the suit (the one first filed out of which he was dismissed, we construe his language to mean) was the only demand ever made on him.

Testimony to be later set forth makes an

understanding of these facts helpful, if not necessary.

The bank answered "that according to the books of said bank it is now, and was at the time said writ of garnishment was served upon it, as shown by the deposit account, indebted to said T. O. Earhart in the sum of $1,205.20," and further stated as a part of its answer that it was "not acquainted with the title to the above said amount of money further than the same was collected upon the note and placed to the credit of said T. O. Earhart, the business having been transacted with him by letter."

S. M. Earhart, wife of T. O. Earhart, and plaintiff in error here, intervened in the action and claimed the money upon grounds that a further statement of the facts will reveal. She and her husband had owned and lived on 640 acres of land with their five children for about eight years. The land lay about 10 miles north of the town of Lubbock. They settled on it in 1901, and in 1909 they moved to Lubbock for the purpose of educating their children. Both testified very positively that up to the time they sold the land they cherished the purpose and intention of returning to it, and that they claimed no other place as their homestead.

The husband testified:

"We bought a house in Lubbock to live in while schooling our children, but sold it prior to the selling of our land."

Deeds were offered in evidence to prove this statement to have been true.

His wife testified:

"My son owned the lots at the time section 22, block D2, was sold to A. Symes. When we moved to Lubbock about three years prior to the sale of the land we owned the lots. My husband was being sued in Lubbock county, and he deeded those lots to my son Earnest."

The son testified that he owned them at the time of the trial.

Deeds offered in evidence showed that on September 19, 1910, T. O. Earhart, without being joined by his wife, conveyed the town lots to his son W. E. Earhart, and that the latter, on August 16, 1912, more than a year after the sale of the country place to Symes, conveyed the lots to his mother.

On January 28, 1910, Earhart gave a mortgage on the north 440 acres of the 640-acre tract for $2,000, and in that instrument especially designated the south 200 acres, the improved part (which was shown to be worth more than the other 440 acres), as his homestead. This was after the family had moved to Lubbock and acquired the city lots on which they lived while there.

On June 16, 1911, Earhart and wife sold the 640 acres to A. Symes for $6,720. $1,400 was paid in cash, and the purchaser assumed the $2,000 mortgage, and three notes for $1,106 each were executed and made payable to T. O. Earhart in one, two, and three years. Earhart used the $1,400 cash to pay debts, or a debt, so far as the same was necessary.

The jury found in response to a special issue that Mrs. Earhart signed the deed on condition that she should have the value of the south 200 acres (the improved part). It was proved, not only by his own testimony, but by the cashier of the bank, who identified the handwriting of the attorney who wrote the transfer, and by the attorney himself, that the three notes were, pursuant to agreement, by Earhart transferred on the day they were made to his wife as the value of her half of the property. It seems that the parties by reason of some domestic infelicity (suggested rather than clearly revealed by the record) divided their property. The notes were carried to the bank by Earnest Earhart for his mother, and as they fell due they were collected by the bank. Earhart and wife had moved to California, but were not living together after their removal. The last of the three notes fell due January 1, 1915, but was paid December 26, 1914, and it is the proceeds of that note which are the subject of controversy in this action.

The cashier of the bank testified that the proceeds of the first note due January 1, 1913, were by Earhart's direction applied, so far as was necessary, to pay certain indebtedness that Earhart and his sons owed the bank; but he could not recall what became of the rest of the proceeds.

Mrs. Earhart testified that she got the proceeds of that note and bought the land she lived on in California. When the second note fell due, the proceeds, upon written direction to the bank, were sent to her in California, and when the third note was ready to be paid a release was sent to California for T. O. Earhart to sign, and he executed it. It contained the usual recitals that he was the owner and holder of the notes.

The cashier testified that the notes had never been out of the bank since they had been put there, and that the indorsement on them was there all the time. This statement seems to have been elicited by reason of an effort made to prove that the indorsement and transfer was an afterthought, and was not coincident with the execution of the notes.

## Opinion.

It is obvious from the foregoing somewhat extended summary of the evidence that there is substantially but one question to be determined, and that is: In view of all the facts and circumstances in evidence and the finding of the jury on the special issues, were the proceeds of the note subject to garnishment as the property of T. O. Earhart?

We will only consider the first assignment of error contained in the application, namely:

"The court erred in not granting a motion for judgment on the special answer and verdict of the jury as is shown by her bill of exception No. 1 of this record."

The only other assignment of error brought up in the application (the ninth) is not in compliance with the rules, being too general and vague to authorize consideration.

Plaintiff rested her contention on two grounds: First, that the proceeds of the note were part of the purchase money of her homestead; second, that regardless of the homestead question her husband was solvent when he transferred the notes to her, hence by such transfer they became her property and were not liable for his debts.

The jury found: First, that at the time Earhart and wife moved off of the south 200 acres of the section, and acquired, and moved on, a place in the town of Lubbock in the year 1909, they did not intend to return and occupy said section as a homestead; second, that all of section 22 was abandoned with the intention never to return and live thereon at the time they moved off, and that they abandoned the 200 acres as a home prior to their sale to Symes; third, that the transfer of the note from T. O. Earhart to his wife was not a gift; fourth, that Mrs. Earhart signed the deed to Symes upon the condition that she was to have the value of the 200 acres out of the south one-half of section 22, block D2; fifth, that T. O. Earhart was solvent when he delivered the notes to his wife.

Speaking for himself and not intending to be understood as speaking for the other members of the court the writer feels constrained to say that a most careful and painstaking analysis of the statement of facts has led him to the conclusion that, when the law on the question of abandonment of a homestead as laid down in Shepherd v. Cassiday, 20 Tex. 25, 70 Am. Dec. 372, Gouhenant v. Cockrell, 20 Tex. 96, Thomas v. Williams, 50 Tex. 275, Sanders v. Sheran, 66 Tex. 657, 2 S. W. 804, Armstrong v. Neville (Civ. App.) 117 S. W. 1012, Robinson v. McGuire (Civ. App.) 203 S. W. 415, and many other cases is applied to the undisputed testimony, the finding of the jury is shown not only to be against the great preponderance of the evidence, but absolutely without evidence to support it.

However, as consideration of the homestead question is not necessary to a proper decision of the case, we pretermit any further reference thereto.

The fact is apparent that plaintiff in error was asserting a homestead right in the south 200 acres and improvements, and refused to sign the deed to Symes until she was assured that the notes representing part of the proceeds, equivalent to the value of the 200 acres, would be delivered to her as her property. Such condition and demand was complied with, and, pursuant to the contract so made, the notes made payable to her husband were by him forthwith assigned and delivered to her, and were by or for her placed in the garnishee bank.

[1] The jury found that Earhart was solvent when he transferred the notes to his wife. Being solvent he had the right to do with his property as he saw fit, even to giving it to strangers. Reynolds v. Lansford, 16 Tex. 286; Higgins v. Johnson's Heirs, 20 Tex. 395, 70 Am. Dec. 394; Story v. Marshall, 24 Tex. 305, 76 Am. Dec. 106; Morrison v. Clark, 55 Tex. 437; Terry v. O'Neal, 71 Tex. 592, 9 S. W. 673; McCutchen v. Purinton, 84 Tex. 604, 19 S. W. 710; Willis v. McIntyre, 70 Tex. 34, 7 S. W. 594, 8 Am. St. Rep. 574. He certainly had the right to give to his wife one-half of the proceeds of community property sold by them by joint deed, and which was claimed by both to be their homestead, and half of the proceeds of which the wife demanded and received as a condition precedent to her signing the deed.

[2] Evidently much stress was laid by the Court of Civil Appeals upon the fact that Earhart executed a release reciting that he was the legal and equitable holder and owner of the notes, but it is elementary that no statement of Earhart, whether verbal or written, in derogation of the title of his wife to the notes, made after the transfer, could affect her rights.

[3] When the notes were delivered to Mrs. Earhart and were by her or by her son as her agent placed in the bank for collection, they were her property, and in contemplation of law were in her possession, and the finding of the jury in response to a special issue which was wholly irrelevant and immaterial, that they were not in her possession, was manifestly erroneous. Being her property, they were, of course, not liable for the debts of her husband, and therefore the judgment of both the district court and Court of Civil Appeals was erroneous, and should be reversed, and judgment rendered here for the plaintiff in error, and it is so recommended.

PHILLIPS, C. J. We approve the judgment recommended in this case.