JAMES DAUGHERTY v. T. W. COX'S ADM'R.

Where there was a contract in the form of a bond for title which recited "that I, "Joseph A. Sergeant, of the county and State aforesaid, have this day bargained "and sold unto Thomas Maxwell a certain tract or parcel of land out of the "north east corner of a league of land granted to me by the Mexican Government," describing the tract sold by metes and bounds, but not giving the number of acres : "and for and in consideration of which, I, Thomas Maxwell, have "given the said Sergeant a second choice of as much land out of my league of "land," describing the league, conditioned that the said Thomas Maxwell do give "and make to the said Sergeant a good and warranty title to the above named "land;" it was held that the bond did not convey such an equitable title or interest to Sergeant as was subject to levy and execution, until the selection was made ; because it did not identify the particular land, or determine the quantity with sufficient certainty, and it further depended on the contingency that Sergeant would make a conveyance for the land which constituted the consideration of Maxwell's undertaking to convey.

Appeal from Fayette. This suit was brought by the appellant against the appellee as administrator of Thomas W. Cox, praying that the title to a certain tract of land to which title had been made to the administrator of Cox, for the estate, under a decree of Court, should be divested from the heirs of said Cox and vested in petitioner. The facts, as appears from

the record, were, that on the 10th July, 1838, one Thomas Maxwell made and executed his bond as follows: " Republic " of Texas, county of Fayette. *Be it known that* I, Joseph A. " Sergeant, of the county and Republic aforesaid, have this " day bargained and sold unto Thomas Maxwell a certain " tract or parcel of land out of the north east corner of a " league of land granted to me by the Mexican Government, " to wit: beginning at a spring on the south side of a small " creek that runs through the east end of my league ; thence " north to Brookfield's line ; thence east to the north east of " same ; thence south to such a point from which a due west " line will strike the divide above the afore-mentioned spring, " thence north to the place of beginning: and for and in con- " sideration of which, I, Thomas Maxwell, have given the " said Sergeant a second choice of as much land out of my " league of land granted to me by the Mexican Government, " and situated and being on the waters of San Marcos, about " thirty miles above Gonzales. The condition of this obliga- " tion is such, that I, Thomas Maxwell, bind myself in the " penalty of five thousand dollars to give and to make to the " said Sergeant a good and warranty title to the above named " land ; then and in that case this obligation to be null and " void, otherways to remain in full force and virtue. July " 10th, 1838." Signed by Thomas Maxwell. Witness, Josiah O. Daniel, James P. Hudson. Sergeant died after the date of the above instrument, and one Lewis was appointed in January, 1840, administrator of his estate, and while so acting as administrator, proceeded by order of said Court to sell the bond, or the land claimed under it ; and one Thomas W. Cox became the purchaser ; and a deed or transfer was made therefor to him by the administrator, on the 1st day of July, A. D. 1845. Maxwell, the maker of the contract or obligation to convey, and Cox, the purchaser of it, both died intestate, and at February Term, 1852, the Probate Court appointed Elizabeth Maxwell administratrix of Maxwell, her husband ; she died, and one Desmukes was appointed admin-

istrator *de bonis non*, and was appointed also administrator of Elizabeth Maxwell. And Nathaniel C. Joiner was appointed administrator of Cox. Since the death of the said Maxwell and Cox, said tract of land has been surveyed and selected, and title thereto made, executed and delivered by said administrator Desmukes to the said administrator Joiner, and is now in his possession. A description of the land so selected and surveyed, was made a part of the petition ; and it was further shown that one William Lewis, on the 18th day of September, A. D. 1849, in the District Court of Fayette county, before the death of the said Cox, recovered a judgment against him for one hundred and ninety-eight dollars ; that a *pulries fi. fa.* issued on said judgment, on the 23rd day of May, 1850, directed to the Sheriff of the county of Caldwell, which was levied on all the right, title and interest of said Cox in and to the Maxwell league in said county, said to be three hundred and seventy acres, more or less ; and the same was sold by the Sheriff, and purchased by the petitioner at the sum of ten dollars, being the highest and best bid ; and he, the petitioner, received the Sheriff's deed for the same. It was averred that the title perfected by the administrator of Maxwell to the defendant, administrator of Cox, was for the same land.

The defendant tendered and paid into Court the ten dollars paid by the plaintiff for the land at the Sheriff's sale. A jury was waived, and the case submitted to the Judge. The judgment awarded that plaintiff should take nothing by his petition ; that he should receive the ten dollars tendered ; and that defendant should go without day and recover of the plaintiff his costs ; from which judgment plaintiff appealed.

*Webb & Harcourt*, for appellant. The interest of Cox, held by title bond, was levied on and sold, and we consider this about the only question at issue.

Was such an interest liable to execution ?

Article 1345, Hartley's Digest, provides that where a Sheriff has made a sale, he shall execute to the purchaser "a con-"veyance of all the right, title, interest or claim, which the "defendant had in and to the property sold."

How can it be said that an officer can follow the direction of this law and yet not convey an equitable interest? The right, title, interest or claim of a party will include every possible interest or title he could have, whether equitable or legal. And the wording of the Act is peculiar, that the officer shall execute to the purchaser "a conveyance of," &c. This is not a mere direction to the officer, of what terms he shall use in the deed, but implies that his deed shall be "a conveyance of all the right, title, interest or claim." We are well aware of the high authorities against an equitable interest being subject to forced sale by execution, but we submit if our statute does not supercede this general doctrine, more especially when considered with reference to our blended system of practice, in which our Courts have and take cognizance of actions legal and equitable. And we think the case of Jordan v. Mayfield, 11 Tex. R. sustains our position.

II. He who seeks equity must do equity. The appellee should have tendered both the principal and interest of the bid, and only tendered the principal. (Ib.)

For these reasons we claim a reversal of the cause.

LIPSCOMB, J. The appellant's counsel rely on the particular terms of the statute. (Hart. Dig. Art. 1345.) It is in the following words: "That when a sale has been made, and the "terms thereof complied with, the Sheriff, Coroner, or Con-"stable shall execute and deliver to the purchaser a convey-"ance of all the right, title, interest and claim which the de-"fendant in execution had in, and to, the property sold;" and they insist that under the broad terms used, of interest and claim, an equitable interest would be included. This may be correct in part; it may be that an equitable claim to title, or a resulting trust, may sometimes be subject to sale

by execution, and yet every equity not subject to sale. If for instance, a purchaser had paid for the land and taken a bond for title, the land would be subject to execution against the purchaser; because there would be nothing uncertain, nothing to be done on the part of the purchaser, nor on the part of the vendor, but to make the title. If, however, other things were to be done by the parties, as in this case a selection was to be made out of a particular but large tract, until these things were done, there would be no such equity to any particular land as would make it subject to the levy of an execution against the holder of such equity. By the bond of Maxwell, no land was set apart; but it had to be selected by Sergeant, and then surveyed, to give the corresponding quantity with the amount to be conveyed by Sergeant to Maxwell, and it further depended on the contingency that Sergeant would make a conveyance for the land which constituted the consideration of Maxwell's undertaking to convey. (See Boggart v. Perry and others, 1 John. Ch. R. 51.) It could not be contended that our statute in the Article cited went further than the statute 29 Charles II., in subjecting equitable and trust estates to execution; and perhaps its terms would go so far, but that would not be far enough to subject such an equity as the one claimed to be subjected to execution in this case.

At the time the execution was levied and the land sold, there was no distinct property that could be levied on and pointed out to a bidder, and the result of the assessment shows what would be the sacrifice of property at Sheriff's sale, if not designated and pointed out with sufficient certainty to enable the purchaser to know what particular land he was bidding for, and to enable the Sheriff particularly to designate what property he had sold. A tract of land of three hundred and seventy acres, more or less, with no other limitation, I suppose, to the *more*, than it is not to exceed in quantity Maxwell's league, and this sold for ten dollars.

But what seems strange, the purchaser not believing that he had obtained a legal title, with certainly very imperfect sense

of right and justice, asks that his title should be perfected to him by a Court acting on equity principles. If his title was bad at law, it is worse in equity and it would be so ruled in every Court governed by sound principles of equity. The judgment is affirmed.

Judgment affirmed.