OBADIAH HENDRICKS V. WILLIAM SNEDIKER ET AL.

The doctrine in the case of Boze v. Davis, 14 Tex., 331, is, that a mere voluntary defective conveyance, which cannot operate at law, is not helped in equity in favor of a volunteer, when there is no consideration, nor any account or fraud on which to ask relief.

The general rule is, that to entitle a party to the aid of a court of equity, his claim for its interposition in his behalf must be supported by a valuable consideration, or at least by what a court of equity considers a meritorious consideration.

The application of this rule to the case of Boze v. Davis is doubted, and the references in the case are criticized.

The court seemed inclined to adopt the principle announced by the Supreme Court of the United States in the case of King v. Thompson, 9 Pet., 204, in these words: "Whatever uncertainty may exist as to the terms of the contract, there can be no question that the complainant acted under it in taking possession of the property and expending a large sum of money in its improvement. In no point of view could such a contract be considered voluntary. There was not only a good consideration, that of natural affec-

tion, but a valuable. To constitute a valuable consideration, it is not necessary that money should be paid; but if, as in this case, it be expended on the property on the faith of the contract, it constitutes a valuable consideration."

It is a familiar doctrine, that there need be no pecuniary benefit passing to the vendor to make a consideration valuable. Anything injurious or detrimental to the other party is equally operative in making the contract binding.

But admitting the right of a party to enforce a specific performance of a parol contract founded upon a meritorious consideration, it by no means follows that such an uncertain equity is the subject of sheriff's sale. The sale of equities must depend upon the peculiar circumstances of each particular case. (Paschal's Dig., Art. 3775, Note 867.)

Where the petition averred that the defendant in the execution had been in possession, holding adversely to all other claimants, and claiming the property as his own, it was an averment of "full property, precursive of all other claims," by virtue of the 17th section of the statute of limitation, and it was error to sustain a demurrer to the petition. (Paschal's Dig., Art. 4624, Note 1033.)

Even if the defendant in the execution was a tenant in common with the other heirs, the purchaser of his interest had a right to recover to the extent of that interest.

That a plaintiff, who showed title, claimed relief on other grounds, was no cause for sustaining a demurrer to the petition.

If a person in possession of land has no other interest than the right to recover the value of improvements made by him, such a claim is not subject to sale under execution. (Paschal's Dig., Art. 3775, Note 867.)

APPEAL from Harrison. The case was tried before D. C. JENNINGS, Esq., a special judge, chosen because of the interest of Hon. CHARLES A. FRAZER, one of the district judges.

Hendricks sued William Snediker and William B. Cole, in an action of trespass to try title, for the recovery of a lot and improvements thereon, in the town of Harrison. In an amended petition he averred, that, on the 8th day of September, 1856, the plaintiff recovered a judgment against Francis W. Brewer and William W. Adams; that execution was issued and levied upon the lot in controversy, and sold on the 2d of March, 1857, to the plaintiff, for $67; that in 1847 the lot was the property of Baalam H.

Brewer, the father of the said Francis W. Brewer, and that as an advancement to him of a part of his estate he donated the lot to Francis in fee simple; that the gift was on the consideration of natural affection; that the son entered into possession, held adversely to the father, and occupied until the death of his father, the father always promising to make him a deed; that after the death of the father his property was administered and divided, but this lot was not included in the assets, not being claimed by either administrators or heirs; that the son had made valuable improvements, having erected a residence and storehouse upon the premises, where he did business until the day of the levy, sometimes leasing out portions of the property and receiving the rents; that he always treated the property as his own, and relied upon the promise of his father, Baalam Brewer, to make him a deed, in consequence of all which it is averred that the equitable title to the premises was in the defendant in the execution, Francis W. Brewer, while the legal title was held by himself and the other heirs of his father in trust for the said Francis; and that the plaintiff, as purchaser of the interests of said Francis, is subrogated to all the rights of the said Francis, and that the said Francis and Caswell C. Brewer had voluntarily appeared and answered, as the landlords of Snediker and Cole.

The plaintiff made parties of the widow and all the heirs of Baalam Brewer, and prayed that the title should be divested out of them and invested in him, and for the rents and profits from the tenants and their landlords, and for the possession of the premises. The defendants interposed a general demurrer, and assigned for special cause that the amended petition set forth a new cause of action. The plaintiff again amended, and prayed to be subrogated to all the rights of Francis W. Brewer, and prayed in the alternative that, if he could not recover the property, he might be allowed compensation for the improvements.

At the trial the demurrer to the original petition (the formal action of trespass to try title) was overruled, and the demurrer to the amended petition, setting up the gift by the father in consideration of natural affection, the possession and valuable improvements by the son, the purchase at sheriff's sale, the death of the father, the legal title cast upon the heirs, the equitable title in the plaintiff, and the demand for specific performance, or else for compensation, was sustained, and the plaintiff declining further to amend or to try upon the trespass, and thus to test the equity against the legal title, his case was dismissed, and a judgment rendered for costs, from which the plaintiff appealed, and assigned the overruling the demurrer as error. The rights of the plaintiff, as a tenant in common with the other heirs, as the purchaser of Francis W. Brewer's interest in the lot, was not averred nor presented in the record. The chief justice considered the case upon the amended petition and general demurrer.

*N. H. Wilson,* for appellant.—The material facts shown by the amendment filed on the 6th February, 1860, are as follows:

1. As to the plaintiff's title from F. W. Brewer: The plaintiff recovered a judgment against said Brewer in September, 1856, under which the lot, with the improvements on it, were sold by the sheriff, in January, 1857, and the plaintiff became the purchaser.

2. As to the said Brewer's title.

[The material facts were here set out.]

Here we find an executed trust, and the relation of trustee and *cestui que trust* existing between the father and son. All its terms are clearly defined; there is nothing in doubt, or resting in covenant.

1st. The trust was created by parol. This may be done. The courts never required declarations of trust concerning land to be in writing previous to the statute 29 Charles

II, c. 3, § 7, which requires them to "be manifested and proved by some writing, signed by the party who is by law enabled to declare such, or by his last will in writing." But our statute (O. & W. Dig., 936) only requires contracts for the sale of land to be in writing. Hence, with us such trusts need not be in writing. (James v. Fulcrod, 5 Tex., 512; Miller v. Roberts, 18 Tex., 16; Mead v. Randolph, 8 Tex., 191; McClenny v. Floyd, 10 Tex., 159.)

2d. A party can constitute himself a trustee by a mere declaration of trust. (2 Pars. on Cont., p. 518, 519; 1 Lead. Cases in Eq., 179; *Ex parte* Pye v. *Ex parte* Dubost, 18 Ves., 140; Wheatly v. Parr, 1 Kee., 551.)

3d. The distinction between an executory and an executed trust is well marked. The former, like a defective voluntary conveyance or execution of a power, is not supported by the courts, unless founded on a valuable consideration, or at least upon a meritorious one, where the trust should perhaps be declared by a sealed instrument. But an executed trust is taken by the courts as they find it; and they act upon it without looking behind it to inquire into the consideration. In this case, however, we have the highly meritorious consideration of a father assisting a son setting up in business, by way of advancement. (Story's Eq., § 787; Ellison v. Ellison, and the English and American notes, 1 Lead. Cases in Eq., 167.)

4th. It has been repeatedly held by this court, that a specific performance of a parol contract for the sale of land will be decreed where all or part of the purchase-money has been paid, and the vendee has gone into possession and made valuable improvements. (Dugan's Heirs v. Colville's Heirs, 8 Tex., 126; Ottenhouse v. Burleson's Adm'r, 11 Tex., 87; Taylor v. Ashley, 15 Tex., 50.) All the reasons that can be urged for the assistance of the court in such cases apply with their full force in this case. The only difference, if any, is between a valuable and a meritorious consideration. A good consideration is certainly sufficient

as between the parties and their heirs; and this case is between the heirs and a person who stands in the place of one of them. In King's Heirs *et al.* v. Thompson and Wife, (9 Pet., 204,) a father gave by parol a house and lot to his daughter and son-in-law. The court held, "There was not only a good consideration, that of natural affection, but a valuable one. To constitute a valuable consideration, it is not necessary that money should be paid; but if, as in this case, it be expended on the property on the faith of the contract, it constitutes a valuable consideration." The terms of the trust, however, were so vague and uncertain, that the court could not decree a specific performance, but held that Thompson and wife were entitled to compensation for improvements made by them, which was a lien on the lot.

In Shepherd v. Beven, 9 Gill, 32, the court held, "That money expended in improvement of land by a son, on the faith of an agreement of his parent to convey the land to him, constitutes a consideration for which a specific performance might be decreed against heirs of the parent.

5th. An equitable interest is subject to sale under execution, and the purchaser acquires the title of the equitable owner and all his rights. (Dougherty v. Cox, 13 Tex., 209.)

6th. The petition is good so far, at least, as it sets up a claim to pay for improvements. (King's Heirs *et al.* v. Thompson and Wife, 9 Pet., 204; Boze v. Davis, 14 Tex., 331.)

*Geo. Lane,* for appellee.—A specific performance was denied in Boze v. Davis, 14 Tex., 331. The difference between the case of the plaintiff and that of Boze is, that F. W. B. is the son of B. H. B., and the amended petition states that the donation was made for the meritorious consideration of natural love and affection, and to make an advancement to F. W. B. It becomes necessary to examine whether such a consideration is sufficient. 2 Story's

Equity Jurisprudence, pp. 793 and 113, says: "We have already had occasion to remark, throughout the whole of the preceding discussions respecting bills for specific performance of contracts, that it has been constantly supposed that said contract was one founded upon a valuable consideration in the contemplation of law." He also says, in continuation, that "Courts of equity do not interfere to enforce voluntary contracts," and gives the following instances, viz: "When a parent has assigned certain scrip to his daughter by a written assignment, which operated as an equitable assignment only, and not a legal transfer, a court of equity refused to compel the donor or his executor to perfect the gift." (2 Story, p. 115, § 793*b.*) Story says it has been said that there are exceptions in regard to voluntary contracts: when it is founded on a meritorious, contra-distinguished from a valuable, consideration—as when it is designed to be a provision for a wife or children. Story, it will be perceived, introduces this subject by saying it has been said. Whenever a commentator or a judge, in treating legal subjects, says it has been said, it may be put down that he did not believe that to be law which he says is only said to be law, and of which Story gives a practical illustration in the same section, by giving the case of a voluntary contract by a father to make a post-nuptial provision for a daughter as being founded on a meritorious, although not on a valuable, consideration, and which was enforced. And he says, but this doctrine has been since denied, and the general rule seems now established that the court will not execute a voluntary contract, but withhold its assistance from a volunteer, whether he seeks to have the benefit of a contract, or covenant, or settlement.

Story is here treating of a consideration; and if there had been a memorandum in writing, yet, if the consideration was not valuable, the court would not compel a specific performance. In this case, made by the plaintiff, there was no memorandum in writing, nor was there any valuable

consideration.   Is the fact that possession was given to the
party any reason why the specific performance should be
decreed?.  Possession was given in the case of Boze v.
Davis, and improvements; so in this case; but in neither
was there any valuable consideration; in neither was there
any memorandum in writing.   And we have seen that the
general rule now established is, that the court will not de-
cree a specific performance when the consideration is meri-
torious, as contra-distinguished from a valuable considera-
tion; and, consequently, the same rule must be applied to
this case as that of Boze v. Davis, in which a specific per-
formance was denied; but the court recognized the right
of Boze to pay for the improvements he had made.   Did
the sale of the property vest any title in the plaintiff if B.
F. W. had no title, legal or equitable?   It did not.   He
had no conveyance by deed, sealed and delivered, as re-
quired by our statutes in regard to conveyances.   He had
no equitable title.   He had no memorandum on which to
found an action to require a conveyance, nor did he pay a
valuable consideration, without which he had no claims
whatever to the land, in law or equity.   If he had either,
the plaintiff, it is supposed, would have succeeded in his
action of ejectment.   The amended petition only sets out
the facts relative to F. W. B's. interest, which would have
merely been the subject of proof, if action of ejectment
had gone on; and, indeed, it cuts no figure in this case, only
as the widow and heirs of B. H. B. are brought in, and a
specific performance asked against them.   If F. W. B. had
neither a legal nor equitable title to the land, the purchase
of the plaintiff obtained for him no title, legal or equitable;
but the plaintiff's last amendment was as to the prayer,
and which asked that the plaintiff, on account of his pur-
chase, be subrogated to the rights of F. W. B., and that
the property be sold to pay for the improvements, which
the plaintiff asked to be decreed to him.   If the plaintiff
failed to get a title by virtue of the sale, he is in the same

position that every other person is who has purchased property the title of which was not in defendant. A purchaser bids at a public sale at his own risk. He must be satisfied with what he gets. Is there any reason to decree to the claim F. W. B. had improvements which he did not buy? The plaintiff bought property, he says, for $26, the improvements on which are worth $2,000, without saying anything as to the value of the land. The inadequacy of the price is so great, that an idea of unfairness in the transaction will naturally be presented to the mind; and he says, if I did not get the land, I want you to give me that which I did not buy. Now, on what principle of equity can he ask this? The most he could ask would be the payment of his judgment of $197 15. But he does not show that the judgment is not paid. It is not stated that F. W. B. is insolvent. Brewer's property may have been sold to pay this judgment.

Moore, C. J.—The demurrer in this case seems to have been sustained on the supposition that the judgment of this court in the case of Boze v. Davis, 14 Tex., 331, precludes appellant from a recovery of the land for which he sues. If the judgment in that case can be maintained, as a correct application of the rules of equity to the facts which were before the court, there can be no doubt that appellant cannot enforce his demand for the land which he claims, if his right to it rested solely upon the ability of the defendant in execution to have enforced a specific performance of the voluntary agreement of his father to make him a conveyance. The decision in this case is placed by the court upon the general principle, uniformly sustained by all the courts from the earliest to the latest cases, that a mere voluntary defective conveyance, which cannot operate at law, is not helped in equity in favor of a volunteer, when there is no consideration nor any accident or fraud on which to ask relief. Undeniably, under the general rule on this

subject, to entitle a party to the aid of a court of equity, his claim for its interposition in his behalf must be supported by a valuable consideration, or, at least, by what a court of equity considers a meritorious consideration. But whether this well-established rule of equity was applicable to the facts before the court in the case of Boze v. Davis may, we think, admit of considerable doubt. The only cases referred to by the court in support of the judgment, to which we have been able to refer, in which the facts were in any degree similar to those before the court, is the case of Kirksey v. Kirksey, 8 Ala., 13, but this was an action in a court of law for the money expended on the faith of the voluntary promise, and Rucker v. Abell, 8 B. Monr., 566, which was a controversy between the volunteer and creditors of the owner. But the applicability of this general rule to a state of facts precisely such as are before this court in the case on which we are commenting is emphatically denied by the Supreme Court of the United States. "Whatever uncertainty may exist as to the terms of the contract, there can be no question that the complainant acted under it in taking possession of the property and expending a large sum of money in its improvement. In no point of view could such a contract be considered voluntary. There was not only a good consideration, that of natural affection, but a valuable one. To constitute a valuable consideration, it is not necessary that money should be paid, but if, as in this case, it be expended on the property on the faith of the contract, it constitutes a valuable consideration." King v. Thompson, 9 Pet., 204. And it seems, but for the uncertainty of the contract, the court would have decreed a specific performance. The principles enunciated in this case are subsequently referred to and approved in the case of Shepherd v. Beven, 9 Gill, 32, by the supreme court of Maryland.

Without feeling called on at this time to decide, if it was necessary for us to determine the point, whether we would

adhere to the decision in the case of Boze v. Davis, or. follow that of the Supreme Court of the United States to which we have referred, we will say, that it seems difficult to us, on correct legal principle, to call a party a volunteer who, on the faith of a parol agreement, has gone into possession and expended his means in improvements, or tell why the court should withhold from him all relief, and yet interpose for the protection of a parol purchaser, although the actual expenditure by the latter may be far less than that of the former. It is a familiar doctrine, that there need be no pecuniary benefit passing to the vendor to make a consideration valuable. Anything injurious or detrimental to the other party is equally operative in making the contract binding.

But if, in the case before us, it should be held, that F. W. Brewer, the defendant in execution, was entitled to have claimed performance of the parol promise of his father, to make him a title to the lot, we feel by no means satisfied that it would benefit the appellant. Would the equitable rights of the party making improvements under such circumstances be subject to levy and sale under execution? The rights of such a party are more or less indefinite and uncertain until they have been fixed by the decree of the court. They seem much more in the nature of an uncertain and undetermined claim or demand against the holder of the title to the land, by enforcing which he may acquire an interest in the land, than a title or interest directly in it. If uncertain interests of this sort are the subject of sale under execution, evidently they must be made at ruinous sacrifices to debtors, and without effecting the purpose of the law in satisfying the claims of creditors. The position of such party is not like that of one holding under a contract, with specific and definite conditions and stipulations. The right to a decree in each case of this kind must depend on its own peculiar circumstances. An equitable interest in land may, no doubt, be the subject of exe-

cution sale, but this is not the case in respect to every equitable interest. As was said by Mr. Justice LIPSCOMB, "It may be that an equitable claim to title or a resulting trust may sometimes be subject to sale by execution. If, for instance, a purchaser had paid for the land and taken a bond for title, the land would be subject to execution against the purchaser, because there would be nothing uncertain, nothing to be done on the part of the purchaser, nor on the part of the vendor, but to make title." (Dougherty v. Cox, 13 Tex., 209.) This question, however, has not been discussed, and, as it may not be important in the further progress of the case, it is sufficient to call the attention of the parties to it, without at present finally disposing of it.

Whatever may be thought as to the foregoing questions, on the first of which the case was evidently decided in the district court, the judgment must be reversed. It is averred in the petition, and admitted by the demurrer, that the defendant in the execution went into possession of the lot in January, 1847, and from that time until the purchase by appellant at sheriff's sale, in March, 1857, he occupied, improved, and held said lot in exclusive possession as his own property, with the full knowledge and consent of his father. Evidently, then, he had acquired, by this possession of it, "full property, precursive of all other claims," by virtue of the 17th section of the statute of limitation, although his possession was without any evidence of title whatever.

But even if this were not the case, as it was shown that the defendant in execution was one of the heirs of the legal owner of the lot, he certainly had a partial interest in it. This may have passed to the appellant by the sheriff's sale. If so, he could, on the trial, have shown its extent, and had a recovery for it. That relief was also claimed on other and erroneous grounds was no reason why a general demurrer should have been sustained to the entire petition.

The demurrer to the last amendment of the petition was properly sustained. If appellant acquired not a right to the land by his purchase at the sheriff's sale, he certainly acquired no interest in any claim which the defendant in execution may have had against the owners of the lot for the improvements which he had made on it. This was a mere equitable claim against the owner, in the nature of an action or demand. It certainly cannot be supposed to be the subject of levy and sale. Nor is there any reason to hold that by a purchase of land under an illegal sale he should have acquired a right to compensation for the improvements, if such right could be sold under execution. The improvements, or right to demand compensation for them from the owner of the land, was not what the sheriff purported to sell. To have sold such right under cover of an illegal sale of the land was calculated to have misled the defendant, and to have prevented persons attending the sale from buying. But most evidently such an interest or claim is not subject to levy and sale under execution.

The judgment is reversed, and the cause

REMANDED.