## STALEY–WYNNE OIL CORPORATION v. INTERNATIONAL SHOE CO.

### No. 13301.

Court of Civil Appeals of Texas. Fort Worth.

Jan. 31, 1936.

Rehearing Denied March 20, 1936.

Weeks & Morrow, of Wichita Falls, for appellant.

Smoot & Smoot and J. R. Ogle, all of Wichita Falls, for appellee.

BROWN, Justice.

J. I. Staley was the owner of a large amount of property, real and personal, much of it being oil-bearing and producing property; and he was liable for a large amount of indebtedness as an individual. His liability to appellee in this suit was that of a surety, as was much of his individual liability.

Staley was a member of a partnership firm known as Staley-Wynne & Company, composed of J. I. Staley, J. C. Wynne, L. W. Fritz, and J. E. Hall. The partnership owed several hundred thousands of dollars, and in addition to Staley's liability for the partnership debt, he was personally liable for many other debts. The partnership owned considerable amount of oil production.

Staley and the partnership and its several members found themselves financially distressed during the depression and took counsel of their many creditors, among them being the appellee. Staley and his associates desired to protect a supposed equity in their properties and to ward off further personal obligations. This could not be done unless they received co-operation from their creditors, and unless they in turn devised some plan for the protection of their creditors. If forced into bankruptcy, the partnership creditors could look first to the partnership assets and the individual creditors look first to the individual assets. If, after the payment of the partnership debts, a surplus remained in the partnership assets, this surplus, as a matter of course, would be distributed among the individual creditors, and if any surplus occurred after the payment of what we have termed the individual debts out of the individual assets, such surplus would necessarily be distributed among the partnership creditors. Necessarily, such a surplus, in either event, could be distributed only in the event either or all partnership creditors or all individual creditors were paid out of the partnership assets or the individual assets.

A proposition was made to all the creditors. A Texas corporation was to be organized by Staley and his said partners. After its organization, in consideration of the delivery of certain of its returned stock, to be made treasury stock, the corporation was to take absolute title to all the partnership assets, free and discharged of any lien except those already existing, and the corporation was to become liable for and assume all partnership debts, and the plan was that the partnership properties and debts should be kept separate and distinct so that the status of the partnership creditors would not be jeopardized in favor of the individual creditors. The plan further contemplated that the corporation should take title to the individual properties owned by the several

members who composed the partnership in such a fashion that an express lien would exist upon these individual properties for the benefit of all individual creditors, with the understanding that previously existing liens thereupon should not be disturbed. The corporation was not to become responsible for the individual debts of J. I. Staley in the sense that a personal judgment could be taken against the corporation for any such individual debts, and the corporation was not to assume any such debts. The individual properties, as we have termed them, were thus kept separate and distinct from the partnership properties, to the end that the individual creditors would be protected in their prior rights against individual properties.

The question of how the corporation could expeditiously dispose of the properties transferred to it which formerly belonged to Staley, as an individual, was considered, and in view of the general lien which was to be recognized for the benefit of all the creditors, and the fact that there were a large number of such creditors, it was thought to be impracticable to procure an individual or joint release from all such creditors when any such individual property was sold. Therefore, a committee of three of Staley's individual creditors was to be selected to authorize the sale of these individual assets held by such corporation, free and discharged of the lien, but the proceeds therefrom to be employed for the benefit of all such individual creditors. Therefore, no mortgage was to be spread of record in favor of this large group of individual creditors. The title to these individual properties was to be taken in the name of the corporation and Staley was obligated to deed and transfer all such properties to the corporation. The appointment of and powers of said committee of three, whose duty it was to agree upon the price and terms of all sales before the corporation could dispose of any of the individual properties, was necessary to assure the creditors that the moneys received from Staley's former individual properties would not be diverted, but that such proceeds would be paid, pro rata, to his individual creditors; and, further, this plan was to assure all such creditors that the properties would not be sacrificed.

Staley and his three partners' under the plan were to, and did in fact, apportion the stock in the corporation between themselves, in keeping with their several contributions to what was the corporate structure of the corporation. This stock was to be issued to them and was to be theirs. The ownership of such stock in the corporation would necessarily mean that Staley and his associates, who were to organize the corporation, would become the owners of any real or supposed equity found in the properties after all creditors were paid. So, under the plan, Staley and his associates were not to have actual control of the stock, and it was to be delivered to the First National Company of Wichita Falls, and the power to vote this stock was given to the creditors. Under the plan, directors were selected who were either creditors or the representatives of creditors.

Should the partnership debts be paid in full and a surplus remain in the partnership properties, the stock owned by the several stockholders would have a real value, represented by this surplus, and this would be true whether the Staley individual properties paid his individual debts or not, because, as to such individual debts, the corporation was not liable and could not be sued therefor. Under any such circumstances, Staley, as the owner of the stock, might possibly gain an advantage over his individual creditors. To overcome this possibility, Staley pledged his stock in the corporation to secure his individual creditors. There was no necessity for Staley to pledge his stock for the benefit of partnership creditors, for the reason that, if and when the individual properties paid the individual debts, the equity in such properties automatically would go to the benefit of the partnership creditors. This is obvious, as the corporation was to be and actually became the owner of all of such property, and, as such owner, would get any equity therein over and above the individual debts.

The plan contemplated that the corporation thus organized should own and operate the valuable oil properties, farms, ranches, and other properties, and endeavor to weather the depression for the apparent benefit of all parties concerned.

The appellee agreed to this plan, as is fully shown by the record, and after the appellee and the other creditors acquiesced in the plan, the corporation at the first meeting of its directors set up the machinery to carry the plan out. For the purpose of giving relief to Staley and his associates, an eighteen months' extension on all debts was requested and granted by the appellee and all other creditors. During that time, under the plan as submitted, no creditor could demand his debt. The arrangement was

to be such, and was such, that since the stock in the corporation belonged to Staley and associates, the business was to be conducted and the properties so conserved that the debts must be paid, and so conducted that Staley and the other debtors could not absorb the properties through excessive salaries or improper distributions to themselves.

The plan, being accepted, was put into effect; the corporation was organized; all necessary deeds and conveyances were made. This was early in 1931. The depression continuing, at the end of the eighteen months, nothing had been done to relieve these so-called individual creditors, and they had not been paid anything on their debts. The appellee was unwilling to give a further extension and reduced its debt (about $1,000) to judgment against Staley. It levied upon certain properties described in the record which were owned independently by Staley before he submitted the aforementioned plan to his creditors, but all of which, after such plan was accepted by the creditors, were by Staley deeded to the said corporation. The properties were levied upon as the properties of J. I. Staley.

The original judgment against Staley obtained by appellee was obtained in a suit for debt filed in the Eighty-Ninth district court of Wichita county, Tex. The appellant corporation, Staley-Wynne Oil Corporation, to whom such properties had been deeded long before, filed the instant suit in the Seventy-Eighth district court of Wichita county, Tex., seeking an injunction to restrain the appellee and the sheriff of Wichita county from selling said properties as the properties of the said Staley. A temporary injunction was granted, but on a hearing was dissolved, and the trial court denied appellant all injunctive relief.

The case being tried to the court, findings of fact and conclusions of law were made, and they are, in substance, as follows:

That on April 30, 1931, J. I. Staley was the owner in fee simple of unencumbered property in Wichita county, Tex. (describing such real property); that on such date Staley made to the defendant below (appellee here), and to others of his creditors, a proposition in writing that in consideration of the creditors extending the debts for a period of 18 months from May 10, 1931, Staley proposed that he would convey the property in question to the plaintiff corporation, which would hold and dispose of such property and apply the proceeds, pro rata, to Staley's debts, but that such arrangement was not to in any way affect existing liens on any properties, or to in any way affect Staley's individual obligation on the original debt. That the defendant (appellee) and other creditors accepted such proposition in writing; that the corporation having been formed, Staley and his wife conveyed the property involved in this suit to the corporation by deed; that the recited consideration was $10 and other valuable consideration; that there was no warranty of title; and the court found that the corporation did not actually give any consideration for the properties; that at the time the corporation took title to such property by such deed, by resolution spread on its minutes, it expressly limited its title to the carrying out of the purposes stated in the proposition made by Staley and associates to their creditors and their acceptance thereof; that on November 10, 1932, the corporation issued to the defendant, appellee, a certificate, certifying that it held the property in question for the use and purposes set out by Staley, and further certifying that the proceeds, increase, and revenues of all equities and all unmortgaged properties received by the corporation should be applied to such creditors, pro rata; that the defendant appellee extended its indebtedness for eighteen months, and nothing having been paid thereon, it secured a judgment on January 18, 1934, in the Eighty-Ninth district court, against J. I. Staley and caused execution to issue on December 4, 1934, and be levied on the property in controversy, which was admitted to have been the property of J. I. Staley prior to the time it was deeded to the defendant corporation; that the judgment had been duly abstracted and filed for record in Wichita county previous to the levy made under execution; that on December 31, 1934, a temporary injunction staying the sale under execution was issued by the Seventy-Eighth district court, and thereafter the proceeding was transferred to the Eighty-Ninth district court.

There are four conclusions of law: "(1) That the transaction in question amounts, in effect, to an assignment by J. I. Staley for the benefit of his creditors; and the Staley-Wynne Corporation has never had any interest therein except that of trustee. (2) That the life of such trust was limited to the extension given on such debts; and

at the expiration of such extension of eighteen months without the trust being executed, the property so conveyed in trust reverted to the original donor. (3) That if the eighteen months extension given on the debts did not measure the time for which the trust was to run, then such trust was without limit as to time, and was in effect a perpetuity and in violation of the state constitution, and therefore without effect. (4) That such property was subject to execution issued on judgment against J. I. Staley."

From the judgment rendered denying appellant injunctive relief, appeal is made to this court.

■ The property having been levied upon as belonging to J. I. Staley, the question before us is: Did Staley have title to the property at the time it was levied upon?

If the conveyance by Staley to the corporation was a mere mortgage, or if the title conveyed by Staley to the corporation, under the circumstances, was not actually vested in the said corporation, or same has been divested by reason of the facts shown, and reinvested in Staley, then the title is now and was when the execution was levied on such property, the property of J. I. Staley. No one could successfully urge that the deed from Staley and wife to the corporation was a mortgage. The appellee urges, in effect, that by the very terms of the agreement, whatever title was conveyed by Staley and wife to the corporation, terminated at the end of the eighteen months. And appellee further urges that unless, under the absolute facts found, this title was to terminate at the end of the eighteen months, the instrument is void because it violates the rule against perpetuities.

A majority of the court does not believe that Staley had any such title in and to the property in question as might be reached by execution. If the debts be paid, the properties will not become Staley's—they have been deeded to the corporation. Staley could not pay the debts and claim the title to the properties; his interest in the properties were sold for stock in the corporation, and this alone was a sufficient consideration for the conveyance made by Staley and wife to the corporation. If the intent behind the whole plan and behind the deed which conveyed this property to the corporation was for Staley to pay the debts and to provide, either expressly or impliedly, that the surplus should be returned to Staley as an individual, then the instrument might have been a common and ordinary assignment for the benefit of the creditors, and even in such circumstances, such property would not be subject to execution by appellee against the individual Staley, nor would the transaction be invalid as violating the rule against perpetuities. Thaxton v. Smith, 90 Tex. 589, 595, 40 S. W. 14; 5 C.J. 1192; 2 R.C.L. 722.

The distinction between the conveyance made here and the common and usual assignment for the benefit of the creditors is that the corporation in the instant suit gave something of value for the properties. It delivered a portion of its treasury stock for any surplus or equity found in the property, and upon the payment of the debts, if there be any surplus, it will be the property of the corporation, and not Staley's property. Let it be understood that none of the property which went into the corporation for the original stock issue was the property involved in this suit. No question is raised as to adequacy of value of the properties to pay for the stock which was originally issued. After the completion of the organization of the corporation, the stockholders made a proposition (all of which is described in the minutes) to surrender certain of their holdings to the corporation, with the understanding that the corporation should use the same to acquire other and additional properties. Staley surrendered 128 shares, Wynne 59, Hall 9, and Fritz 39, and Morrow, who was one of the incorporators, surrendered one share. Thereupon, Staley, Wynne, Fritz, and Hall agreed to convey certain other properties, which actually consisted of the remaining properties of the old partnership, in consideration of the return to them of a certain portion of the surrendered stock. This proposition was accepted and 171 shares of the stock, held in the treasury by virtue of the delivery thereof, as aforesaid, were ordered delivered to the said four parties, to be divided among them as directed. None of this property covers the property involved in this suit. But next in line of development, Staley presented a proposition wherein he agreed to convey certain properties in consideration of the delivery to him of 65 shares of the capital stock of the corporation held in the treasury, and the proposition was accepted, and Staley and wife made deeds of conveyance to the corporation, including the property here in controversy.

We find no basis in the undisputed facts for the holding of the trial court that the corporation gave no consideration for this property. This is not a case where a creditor attacks a deed made by the debtor, on the theory that it was executed in fraud of his rights. The creditor in the instant suit was intended to be a beneficiary under the conveyance. He certainly assented to the conveyance, and, in so many words, directed that the conveyance be made, ostensibly for his benefit. 21 C.J. § 212, p. 1210; 2 R.C.L. 722.

If a conveyance of property is made to protect or even to prefer creditors, it is not necessarily fraudulent. Under the laws of Texas, one may prefer his creditors, provided the property is not in excess of the amount of the debt. 20 Tex.Jur., § 65, p. 422. No attack is made by the appellee on the theory that the conveyance of the property by Staley was made in fraud of the rights of his creditors. In returning a portion of the fully paid capital stock in the corporation to the corporation to be held as treasury stock and used in acquiring other property, Staley and his associates were guilty of no impropriety. This was not an unusual but a lawful act upon the part of the stockholders. Sherman v. Shaughnessy, 148 Mo.App. 679, 129 S.W. 245; Marshall on Corporations, p. 651.

The majority do not believe that under this record any title in and to the properties conveyed by Staley to the corporation reverted to Staley. Looking to 21 Corpus Juris, p. 1016, we find a reversionary estate consists in the residue of an estate left in the grantor, the possession of which is to commence after the determination of some particular estate granted out of him. We do not find that any estate in and to the property so conveyed by Staley was left in Staley. Under the plan, Staley was not interested in the title reverting to him because he contracted for stock in the corporation as a consideration for his conveyances, and such stock represented his right to any equity or surplus that might be found in the property so conveyed. If the liens then existing against the property and that created for the special benefit of the individual creditors should absorb the property, no interest could possibly remain that could in any manner revert to Staley.

We do not find that the transaction complained of violates the constitutional rule against perpetuities. The title was immediately vested in the corporation by the deeds, duly executed, and we hold that the legal title to the property in controversy is vested in the Staley-Wynne Oil Corporation. The property was conveyed to the corporation for a distinct purpose, namely, to be used, operated, and sold for the benefit of the creditors, appellee being one of them, and it seems to us that the presence of all such interested parties was necessary in any suit or undertaking having for its purpose the subjecting of this property to the payment of any creditor's debt, and as appellee seeks to subject the property to the payment of its debt, it should have sued for the benefit of all creditors situated as was appellee. Until the claims and rights of all the creditors in and to the property in question has been determined, any supposed title in Staley is too uncertain to be subjected to sale by execution. Hendricks v. Snediker, 30 Tex. 296, 307; Chase v. York County Savings Bank, 89 Tex. 316, 36 S.W. 406, 32 L.R.A. 785, 59 Am.St.Rep. 48.

Believing that the title in the property in controversy is vested in the appellant corporation, and that appellee cannot levy an execution out of the judgment against Staley upon such property to satisfy such judgment, we hold that the judgment of the trial court denying appellant its injunctive relief sought should be reversed and the judgment here rendered as prayed for.

Appellee urges that the district court had no jurisdiction to hear this cause for, that, the original judgment against Staley was obtained by appellee in the Eighty-Ninth district court of Wichita county, and the petition and suit for injunction was brought in the Seventy-Eighth district court of Wichita county, and appellee relies on article 4656, Rev.Civ.Statutes. But this article has no application in an injunction proceeding brought by one to stay execution on property claimed by one who was not a party to the original judgment. Rockwell Bros. & Co. v. Lee (Tex.Civ.App.) 21 S.W.(2d) 30; Maier v. Davis (Tex.Civ. App.) 72 S.W.(2d) 308.

Judgment of the trial court reversed, and judgment here rendered for appellant.

MARTIN, J., not sitting.