CODY, Justice.
This suit was instituted by appellants in the form of trespass to try title to the oil, gas and other minerals in a certain specified 4,985.41 acres in Matagorda County. The common source of title was J. V. Brasfield, who acquired the fee simple title to the land involved on December 4, 1919. On the same day that he acquired the title to such land, Brasfield conveyed to Burke Vancil, Trustee for the benefit of the various and sundry beneficiaries named in the different deeds employed to convey same, the surface rights in the various tracts constituting such 4,985.41 acres, together with [/gth of the minerals in each such tract. And in each of such deeds Brasfield reserved to himself a %ths interest in the mineral rights in each such tract, using for the purpose of such reservation in each such deed the following language: “Excepting and reserving in me, the grantor herein, a seven-eighths interest in all oil, sulphur and other minerals in or under the surface of said land, with the right to prospect for, and develop, produce and secure, and to transport the same across and from said land, and the right of ingress and egress therefor.”
Thereafter, in the year 1920, Brasfield executed oil and gas leases to various lessees on the %ths undivided mineral interest which he had reserved to himself out of the tracts constituting the 4,985.41 acres involved, retaining for himself a ⅛⅛ royalty interest out of such %ths interest. In other words, each lease was a standard commercial Texas oil lease, providing for Brasfield an eighth royalty, and most of such leases being for the primary term of five years, and provided for payment of rentals in lieu of drilling operations. The ⅛⅛ royalty interest reserved to Brasfield was ⅜⅛ of the reserved %ths interest, or %4ths: The working interest which was assigned to the lessee was therefore the difference between the %ths and %4ths of the minerals.
Appellees were defendants below. Their claim to the %ths interest is based on an execution sale held on March 3, 1925, under an execution issued under a judgment obtained by Matt Pierce against Bras-field in a suit in the district court of Mata-gorda County, in cause No. 8654 in such court. At such execution sale the sheriff purported to sell all of Brasfield’s interest, right, etc., in the %ths of the minerals in the 4,985.41 acres; and Matt Pierce, plaintiff in judgment, and his attorney, bought in such interest for $2,300, being the amount of the judgment, interest and costs on the day of such sale.
Appellants conceded, as we understand it, that said sheriff’s sale was valid and effective to transfer the royalty interest retained by Brasfield in such leases, being Ygth of %ths of the oil and gas under the 4,985.41 acres, and no contention is 'made that said %4ths failed to pass by said sheriff’s sale. They contend, however, that Brasfield owned only a “possibility of re-verter” in such 4%4ths of the minerals which was then owned by the lessees, and that such an interest was too inchoate and incomplete to be levied upon or caught by an execution, and that therefore nothing passed to the purchasers at such execution sale, save and except the %4ths royalty interest in which Brasfield owned the right of present enjoyment. Therefore, so appellants contend, when the leases given by Brasfield, covering 4%4ths of the minerals in the 4,985.41 acres expired — which expiration occurred prior to March 6, 1930, some five years after the execution sale— such 4%4ths interest reverted to Brasfield. On March 6, 1931, Brasfield executed a deed to D. E. Frost, Harry Fisher, and S. D. Boynton, which undertook to convey the %ths mineral interest which Brasfield had reserved in his various deeds to Burke Vancil, Trustee, wherein he conveyed the surface rights and ⅛⅛ of the minerals in the 4,985.41 acres. The grantees, or their successors in interest, in the mineral deed of March 6, 1931, brought this suit (as above indicated) in trespass to try title. In the second count of their petition, they pled their title specially.
The trial was had before the court without a jury, upon an agreed statement of facts, the substance of which has been given above. The trial court found for appellees, and appellants seek to reverse the trial court’s judgment in so far as it awards appellees the 4%4ths interests of the oil, gas and other minerals in the 4,985.41 acres.
From the facts stated, Brasfield was the fee-owner of %ths of the minerals in the 4,985.41 acres before he covered it with mineral leases. The effect of the leases was doubtless to leave in himself the right of present enjoyment of a ⅛⅛ royalty in %ths of the minerals, and to place in the lessees a determinable fee to 4%4ths of the minerals, subject to an inchoate *984 right to a reversion of such 4%rths, which our Supreme Court has identified as a “possibility of reverter”. Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566. No doubt such “possibility of reverter” or inchoate right to the reversion of the working interest in the minerals is an interest in land in Texas. Caruthers v. Leonard, Tex.Com.App., 254 S.W. 779, 782. Such a right can be deeded by its owner as an interest separate and apart from the surface rights or royalty. Id. Such inchoate reversionary right is conveyed by a general warranty deed to the land to which it is attached, even though it is not therein referred to. Robinson v. Jacobs, 113 Tex. 231, 254 S.W. 309. And the Statute of Frauds applies to a contract for the sale of such an interest. O’Brien v. Jones, Tex.Civ.App., 274 S.W. 242, 243, writ dismissed. See also Evans v. Mills, 5 Cir., 67 F.2d 840.
It is appellants’ contention, as we understand it, that Brasfield’s “possibility of re-verter” in the working interest under the leases was in its nature and with reference to its value so undetermined, uncertain and contingent that it would be incapable of being appraised or sold with fairness to both debtor and creditor, and therefore could not be levied upon.
 Now we may, for convenience of discussion, break up Brasfield’s interest, at the time it was levied upon and sold, into such elements as royalty rights, or as the right to demand and receive the payment of rentals made’ in lieu of' drilling operations, or as his inchoate right to the reversion of the working interest held by the lessees. But actually such elements, at the time of the execution sale, were merged together in one ownership to form “all the right, title, interest and claim which the defendant in execution had in and to the property.” The language just quoted comes from Art. 3816. And by the terms of that article when the buyer at an execution sale complies with the terms of the sale he is entitled to a deed to all the right, title, interest and claim which the defendant in- execution has in the property sold. The sheriff did not undertake, in the execution sale we are concerned with, to deal with Brasfield’s “possibility of reverter” in the working interests under the leases, as such. But the execution deed conveyed all his right, title, interest and claim in the land. It may be that the value of Bras-field’s “possibility of reverter” in the working interest under the leases, was difficult or impossible to determine. There seems to have been no proof with reference to that. But the fact that it might have been difficult or impossible to determine the value of the “possibility of reverter” as a segregated element of Brasfield’s ownership in the land does not establish that it would have been difficult or impossible to determine the value of “all his right, title, interest or claim” in the 4,985.41 acres. It is a matter of common knowledge that the usual and customary way for a land-owner to realize on the value of his land for oil is to get it leased, retaining royalty rights, and through such royalty rights to share in the profits which it is hoped will issue from his land in the form of oil production, or to sell such royalty rights or portions thereof to .others. In other words, the usual method by which the land-owner realizes on his oil rights is through royalty rights; and the thing that gives value to a royalty right prior to actual production is the belief that the working interest, which is created by the -selfsame lease that creates the royalty rights, will be developed and operated. See Frost v. Standard Oil Company, Tex.Civ.App., 107 S.W.2d 1037, 1038. It would be more reasonable for an owner of oil rights in land to fear that their value would be sacrificed at a forced sale where the land is not under an oil lease, than where it is. But be that as it may, it seems very clear to us that by placing an oil lease on his land Brasfield did not thereby exempt his remaining interest therein from liability for execution for his debts. All of his interest was, it seems plain to us, liable to execution.
Assuming, however, that we are wrong in our view that appellants have no right to have Brasfield’s “possibility of reverter” treated as being separate and apart from his remaining oil interests in the land in question at the time of the execution sale, we still do not believe that we have any basis for holding that the interest of Bras-field was so undetermined, uncertain and contingent that it was incapable of being sold with fairness to the debtor and creditor, and so, not subject to being levied upon. In support of their contention appellants rely on such cases as Gushwa v. Gushwa, 93 Ind.App. 68, 177 N.E. 366; O’Neal v. Clymer, Tex.Civ.App., 61 S.W. 545; Moser v. Tucker, 87 Tex. 94, 26 S.W. 1044; and Chase v. Bank, 89 Tex. 316, 36 *985 S.W. 406, 32 L.R.A. 785, 59 Am.St.Rep. 48.
In the Gushwa case it was held that a “possibility of reverter” was not subject to execution sale. However, it appears that in Indiana, where the case arose, the possibility of reverter after a condition subsequent — which we understand was the case in the Gushwa case — is not assignable. Federal Land Bank v. Luckenbill, 213 Ind. 616, 13 N.E.2d 531. If it was not subject to voluntary sale, it would not be subject to forced sale. Moser v. Tucker, 87 Tex. 94, 26 S.W. 1044.
The case of O’Neal v. Clymer, supra, is too long to review; as it seems distinguishable on the facts from the case before us, and is by the court based on Chase v. Bank, supra, we will not review it, the more especially as the Chase case does itself review the Texas cases upon which appellants rely, decided prior to its decisions — March 9, 1896. The facts of the Chase case, briefly stated, were that eleven parties contributed together to the purchase of nine tracts of land, situated near Denison, Texas, and caused the same to be conveyed to one of their number, P. E. Fairbanks, Trustee, by deeds from various parties; that it was the intention of the parties in having the property conveyed to Fairbanks as trustee, that he should have absolute title, to facilitate the transaction, and his only obligation to his various associates being to account to them for the proceeds of the sale.
W. P. Rice, one of these parties, had contributed $14,000 to the venture and M. H. French $6,000. They transferred their respective interests in said trust to other parties, of which said transfers the plaintiff, York County Savings Bank, had no notice at the time of their levy and attachment on the interests of said Rice and French in the land, in their suit for a judgment against Rice and French and foreclosure of their claimed attachment lien — the transfer not being recorded at said time.
The trial court decided the question in favor of Rice and French’s transferees and rendered judgment in their favor, but the Court of Civil Appeals reversed the judgment of the trial court and rendered judgment for the bank, and the transferees secured a writ and assigned as error the ruling of the Court of Civil Appeals; and the Supreme Court reversed the judgment of the Court of Civil Appeals and reinstated that of the district court, Chase v. York County Savings Bank, 89 Tex. 316, 36 S.W. 406, 32 L.R.A. 785, 59 Am.St.Rep. 48.
The Supreme Court pointed out that equitable interests were not subject to execution sale at common law, and that to enable creditors to subject to the payment of their debts such interests of their debtors in lands as were held by others in trust for them, the Statute of 29 Charles II, Ch. 3, provided: “ ‘that * * * it shall * * * be lawful for every sheriff or other officer to whom any writ or precept * * * shall be directed, * * * upon any judgment,’ etc., ‘to do, make and deliver execution unto the party in that behalf suing, of all such lands * * * as any other person * * * shall be seized or possessed in trust for him against whom execution is so sued.’ * * * ‘This statute made a change in the common law, and, up to a certain extent, at least, made a trust the subject of inquiry and cognizance in a legal proceeding. We think that the trust that is to be thus treated must be a clear and simple trust for the benefit of the debtor; the object of the statute * * * to be merely to remove the technical objection arising from the interest in lands being legally vested in another person, where it is so vested for the benefit of the debtor.’ ” [89 Tex. 316, 36 S.W. 407, 32 L.R.A. 785, 59 Am.St.Rep. 48.] The court then quoted from Daugherty v. Cox, 13 Tex. 209: “‘It could not be contended that our statute, in the article cited [i. e., Article 3816 governing execution deed, quoted supra], went further than the statute of 29 Car. II. in subjecting equities and trust estates to execution, and perhaps its terms would go as far, but that would not be far enough to subject such an equity as the one claimed to be subject to execution in this [the Daugherty] case.’ ” The court concluded by holding that all Rice and French owned was a mere right in equity to demand an accounting of the proceeds of the sales of the land, and no interest in the land itself, and so their interest could not be reached by a writ of execution.
In Moser v. Tucker, 87 Tex. 94, 26 S.W. 1044, the Supreme Court passed on a certified question. The court there said, 87 Tex. at page 96, 26 S.W. at page 1045:
“It must be conceded that no property or interest in property is subject to sale under execution or like process unless the *986 debtor, if sui juris, has powér to pass title to such property or interest in property by his own act. [Citing authorities.]
“There is no doubt that uncertain or contingent vested estates or rights in property may ordinarily be subjected to payment of debts through execution or like process * *
“It is not, however, every interest in property a debtor may have right to or to acquire that may be subjected to sale under execution or otherwise for payment of his debts, for in many instances his right is so remote and contingent that it is deemed more likely to subserve the ends of justice not so to subject it than to take the risk of sacrifice of contingent right by procedure which will most likely be of no practical benefit to the creditor, or may be ruinous to the debtor.
“This is illustrated by cases decided in this state.” (Citing Daugherty v. Cox, 13 Tex. 209; Hendricks v. Snediker, 30 Tex. 296 (both of which cases being among those reviewed in the Chase case), and Edwards v. Norton, 55 Tex. 405.)
Each of the cases cited related to the question of whether a mere equity could be subjected to execution. And, as indicated in the Chase case, such an interest is not subject to execution sale.
The true rule, as to property which can be levied on by a writ of execution and sold, where not exempt, is, we believe, indicated in Gregg v. First National Bank, Tex.Com.App., 26 S.W.2d 179, 181, in these words: “He possessed such an interest in the property as might be transferred by assignment, consequently it was subject to sale under execution.” (Citing authorities)
There are exceptions to such rule, such as are indicated by the Chase case, supra. A mere expectancy of inheritance is another. Hale v. Hollon, 90 Tex. 427, 39 S.W. 287, 36 L.R.A. 75, 59 Am.St.Rep. 819. Indeed, a mere expectancy of inheritance is not, properly considered, property at all, but a mere probability that the heir or next of kin of another will come to own his property when he, the then owner, through the disability of death, becomes incapable of ownership. The character of property, attaching to an expectancy of inheritance when it is sold, inheres in the contract which a court of equity will enforce under some circumstances, and not in the expectancy. But the interest which Bras-field owned, and which was levied upon and sold under execution, was, in our opinion, property that was subject to forced sale.
We have been greatly aided .in the consideration of this case by the exceptionally able and well prepared briefs filed by both sides, and take pleasure in thus acknowledging our indebtedness to counsel.
Believing that the judgment of the court below was correct, it is affirmed.
Affirmed.